IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| ZEHAO YU, | |
| Plaintiff, | **8:25CV426** |
| vs. | |
| KEN CLARY, Chief of Bellvue Police in Nebraska, in official capacity and individually; BELLVUE POLICE, THE US MINT, KRISTIE MCNALLY, GREG WEINMAN, and JOHN P. BRAWDY, | **MEMORANDUM AND ORDER** |
| Defendants. | |

This matter is before the Court on Plaintiff Zehao Yu's complaint filed on June 27, 2025. Filing No. 1. Plaintiff has been granted leave to proceed in forma pauperis. The Court now conducts an initial review of Plaintiff's claims to determine whether summary dismissal is appropriate under 28 U.S.C. § 1915(e)(2).

## I. APPLICABLE LEGAL STANDARDS ON INITIAL REVIEW

The Court is required to review in forma pauperis and prisoner complaints to determine whether summary dismissal is appropriate. *See* 28 U.S.C. § 1915(e); 28 U.S.C. § 1915A. The Court must dismiss a complaint or any portion of it that states a frivolous or malicious claim, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2); 28 U.S.C. § 1915A(b).

"The essential function of a complaint under the Federal Rules of Civil Procedure is to give the opposing party 'fair notice of the nature and basis or grounds for a claim, and a general indication of the type of litigation involved.'" *Topchian v. JPMorgan Chase Bank, N.A.*, 760 F.3d 843, 848 (8th Cir. 2014) (quoting *Hopkins v. Saunders*, 199 F.3d 968, 973 (8th Cir. 1999)). Plaintiffs must set forth enough factual allegations to "nudge[ ] their claims across the line from conceivable to plausible," or "their complaint must be dismissed." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 569-70 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

"A pro se complaint must be liberally construed, and pro se litigants are held to a lesser pleading standard than other parties." *Topchian*, 760 F.3d at 849 (internal quotation marks and citations omitted). This means that "if the essence of an allegation is discernible, even though it is not pleaded with legal nicety, then the district court should construe the complaint in a way that permits the layperson's claim to be considered within the proper legal framework." *Stone v. Harry,* 364 F.3d 912, 915 (8th Cir. 2004). However, even pro se complaints are required to allege facts which, if true, state a claim for relief as a matter of law. *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980).

## II. SUMMARY OF COMPLAINT

Plaintiff sues Ken Clary, Chief of the Bellevue Police Department (BPD), in his official and individual capacity; the Bellevue Police Department; the U.S. Mint; Kristie McNally; Greg Weinman; and John P. Brawdy. Filing No. 1. The following summarizes Plaintiff's allegations.

Plaintiff is an international student from China. His father lives in China and works at a metal recycling factory which receives containers of junk from the United States for recycling. As a result of the factory's mechanical sorting process, U.S. coins that were discarded in the United States are collected in China. Plaintiff's father gathers these U.S. coins and ships them to Plaintiff in the United States. Plaintiff then redeems the coins for cash using a Coinstar machine at a Walmart Supercenter in Bellevue, Nebraska. Although the coins are often damaged, they were nonetheless authentic.

The U.S. Mint has investigated the mass redemption of coins, targeting importers of coins salvaged from the recycling factories in China. The U.S. Mint has complained that coins coming from China are forged. In 2010, at the request of the U.S. Mint, the Office of the Inspector General stopped and investigated random trucks en route to the U.S. Mint, and it sent agents to China to find evidence of coin manufacturing. It found no evidence of counterfeiting. Filing No. 1 at 13-14.

The U.S. Mint contracts with private operators such as Coinstar, which operates machines that pay cash for deposited coins. Coinstar submits the coins deposited in its machines to the U.S. Mint, which redeems the old coins, then melts them down and uses the raw materials to create new coins. Brawdy, the Chief of the U.S. Mint Police, has monitored imports from China, and with quack experts and fabricated lab reports of the coins' metallurgical composition, has developed blacklists of recycling factories in China that can no longer import U.S. coins. Brawdy intends to crush the coin importers by confiscating imported coins, making false arrests, and then forcing the intended coin recipients to file court proceedings to retrieve their coins. Filing No. 1 at 3-4, 16.

3

On October 7, 2024, Plaintiff went to a Walmart Supermarket in Bellevue, Nebraska and started dropping coins into the Coinstar machine. A Walmart employee approached Plaintiff, complained that Plaintiff's coins jammed the machine, and claimed the store incurs losses when the Coinstar machine is jammed and nonoperational. While the employee further stated Walmart customers complained about receiving the coins, Plaintiff alleges that pursuant to contract terms, Coinstar coins are sent to the U.S. Mint and not used in customer transactions. Filing No. 1 at 4, 12.

A BPD officer arrived at the Walmart and handed Plaintiff a restraining order which prohibited him from returning to the premises of the Walmart Supermarket for a period of one year—until Oct. 7, 2025. The police confiscated the $1,600 worth of coins Plaintiff had intended to deposit into the Coinstar machine. Plaintiff alleges he dropped only real U.S. coins in the Coinstar machine, not counterfeit coins or "slugs"—pieces of cheap metal, usually with no embossing that is dropped into a machine to pass off as a real coin. Filing No. 1 at 4-5.

On October 11, 2024, Clary applied for a search warrant, falsely alleging Plaintiff was dropping slugs into the Coinstar machine. Filing No. 1 at 4. Plaintiff claims Weinman, an attorney for the U.S. Mint, devised policies and techniques of fabricating false probable cause, avoiding testing of seized coins, and instructing the BPD on how to carry out U.S. Mint objectives. Filing No. 1 at 3. Plaintiff claims that in preparing the warrant application, Clary and the BPD fabricated allegations of a crime, relying on claims of a fantom Chinese coin counterfeiting network and failing to test the coins before asking for the warrant. He claims that had the officers visually inspected the coins, they would have known the coins were real. Filing No. 1 at 13,

The warrant was executed on October 18, 2024. The police seized $6,000 in banknotes, $44,000 in coins, and the key to a safe deposit box at InterState Bank. The police used the key to seize $59,439 from the safe deposit box. Filing No. 1 at 4-5.

Plaintiff was arrested. Filing No. 1 at 5.

Plaintiff called the police on October 29, 2024, to demand that his seized funds be returned. He was told that the seized coins were being transferred to the U.S. Mint, and it "will take time" to complete testing. From Plaintiff's father's experience, U.S. Mint testing can take a year or more. Filing No. 1 at 13.

On October 30, 2024, Plaintiff moved to quash the search warrant, demanded the return of his property, and asked the court to vacate the restraining order barring him from entering Walmart. The court did not set a hearing on his motion. Filing No. 1 at 2, 5.

Plaintiff seeks recovery against the defendants for illegally seizing his property. Filing No. 1 at 12. He seeks recovery from Clary and the BPD under 42 U.S.C. § 1983 for violating his Fourth Amendment rights when they seized his personal property without a valid warrant; exceeded the scope of the warrant when they searched the safe deposit box; raided his home, placed a lien on his bank accounts, and took all his money; and delayed answering his questions and returning his property. Plaintiff claims Clary and the BPD failed to adopt proper and clear policies for the handling of slug offenses, and they failed to train officers on how to distinguish slugs from old and mutilated coins, properly handle offenses involving slugs, and investigate abuse of Coinstar machines. He further alleges they failed to adopt a clear policy or custom for contesting the seizure of property and challenging the contents of warrant applications authorizing the seizure. Filing No. 1 at 7-9.

5

Plaintiff alleges all defendants are liable for intentionally converting his property. Filing No. 1 at 10-11. He alleges he was falsely arrested on Oct. 18, 2024, and falsely incriminated in criminal activities (such as forgeries, use of slugs and fraud on Walmart). Filing No. 1 at 11-13. Finally, Plaintiff alleges a right to recover under *Bivens v. Six Unknown Named Agents*, 403 US 388 (1971), because the U.S. Mint and its employees targeted importers of coins salvaged from the recycling factories in China. He claims the U.S. Mint defendants maliciously developed procedures for suspected imported coins from China, and those procedures are designed to ruin persons such as Plaintiff by knowingly and willingly impoverishing them, and then not returning the seized property or even answering whether the coins seized are believed to be authentic or counterfeit. Filing No. 1 at 13-16.

Plaintiff claims the defendants acted with malice, recklessness and total and deliberate disregard for his contractual and personal rights, and due to defendants' seizure of his property, he lost his livelihood and had to drop out of college. He seeks return of the $1,600 of coins seized on October 7, 2024, the items seized during execution of a search warrant October 18, 2024, and the money taken from the bank safe deposit box on October 18, 2024. He further requests $200,000 as compensation for pain and suffering resulting from the false arrest and illegal seizure of the property. Filing No. 1 at 9-10.

### III. DISCUSSION

Plaintiff seeks recovery against the defendants under 42 U.S.C. § 1983, *Bivens*, and a common law conversion claim.

### A. Conversion Claim

Plaintiff alleges he is entitled to return of his seized property on a common law theory of conversion. However, under Nebraska statutory law:

> [P]roperty seized under a search warrant or validly seized without
> a warrant shall be safely kept by the officer seizing the same,
> unless otherwise directed by the judge or magistrate, and shall be
> so kept so long as necessary for the purpose of being produced as
> evidence in any trial. Property seized may not be taken from the
> officer having it in custody by replevin or other writ so long as it is
> or may be required as evidence in any trial, nor may it be so taken
> in any event where a complaint has been filed in connection with
> which the property was or may be used as evidence, and the court
> in which such complaint was filed shall have exclusive jurisdiction
> for disposition of the property or funds and to determine rights
> therein, including questions respecting the title, possession,
> control, and disposition thereof.

Neb. Rev. Stat. § 29-818. Pursuant to § 29-818, Plaintiff cannot obtain return
of his seized property by pursuing a § 1983 action in federal court. As to loss of
his property, Plaintiff is limited to seeking an award of damages for the alleged
violation of his Fourth Amendment rights. *Bradley v. Lincoln Police Dep't*, No.
4:20CV3134, 2021 WL 1873427, at *3 (D. Neb. May 10, 2021).

## B. Claims against the U.S. Mint and its Employees

Plaintiff alleges he is entitled to recover from the U.S. Mint. He also
names McNally, Weinman, and Brawdy, U.S. Mint employees, as defendants.
Claims against these employees, in their official capacity, are claims against
the U.S. Mint. *Kentucky v. Graham*, 473 U.S. 159, 166 (1985) ("[A]n official-
capacity suit is, in all respects other than name, to be treated as a suit against
the entity.").

It is well settled that a *Bivens* action cannot be prosecuted against the
United States and its agencies because of sovereign immunity. *Buford v.
Runyon*, 160 F.3d 1199, 1203 (8th Cir. 1998). Moreover, Plaintiff's complaint
alleges the U.S. Mint opposes the import of coins from China and to that end,
it confiscates coins that arrive in the U.S., arrests the intended recipients, and
resists returning the coins to their rightful owners. But based on Plaintiff's

allegations, the BPD, not the U.S. Mint, seized his coins and money, arrested him, and will not respond to his requests for return of the seized property. While he alleges BPD and the U.S. Mint are acting "in concert," there are no allegations of fact to support that characterization. BPD has sent the coins to the U.S. Mint for testing, but that act does not divest BPD of control over this potential evidence.

Plaintiff has also failed to sufficiently allege *Bivens* claims against the U.S. Mint employees. Plaintiff names McNally, Acting Director of the U.S. Mint, as a defendant, but he has failed to raise any allegations against her in the complaint. Plaintiff alleges Brawdy initiated ongoing investigations of coin imports from China, but Plaintiff does not allege that Brawdy personally investigated Plaintiff, or the coins Plaintiff received from his father, nor does he allege facts suggesting Brawdy's investigation directly harmed him. And as his sole allegation against Weinman, counsel for the U.S. Mint, Plaintiff claims "Weinman is the legal advisor devising the policies and techniques of fabricating false probable cause, avoiding testing of seized coins, and instructing the Bellevue Police how to carry out Mint objectives." Filing No. 1 at 3. Plaintiff fails to allege any facts supporting a causal connection between the content of the BPD warrant application and the alleged information and instruction received from Weinman.

Plaintiff has not alleged sufficient facts to state a claim against the U.S. Mint, or its employees in their official capacities, or *Bivens* claims against the U.S. Mint employees in their individual capacities.

## C. Claims against Bellevue Police Department and Clary, in his official capacity

Plaintiff is suing the BPD, and its Police Chief, Clary, in his official capacity under 42 U.S.C. § 1983. To recover under 42 U.S.C. § 1983, Plaintiff

must show "the conduct complained of was committed by a person acting under color of state law," and this conduct deprived him of "rights, privileges, or immunities secured by the Constitution or laws of the United States." *DuBose v. Kelly*, 187 F.3d 999, 1002 (8th Cir. 1999).

Whether a party, other than an individual or a corporation, has the capacity to be sued is determined "by the law of the state where the court is located." Fed. R. Civ. P. 17(b). Under Nebraska law, cities of the first class[1] may sue and be sued, Neb. Rev. Stat. §§ 16–201, but not city police departments. A city police department is an agency of the city and has no separate legal status under Nebraska law. *Hood-Bey v. Brown*, No. 8:24CV474, 2025 WL 1167837, at *12 (D. Neb. Apr. 22, 2025) (collecting cases). So, Bellevue, Nebraska, is the proper defendant for Plaintiff's claim against BPD.

As to Clary, "[a] suit against a public official in his official capacity is actually a suit against the entity for which the official is an agent." *Elder–Keep v. Aksamit*, 460 F.3d 979, 986 (8th Cir. 2006). Therefore, Plaintiff's complaint against Clary, in his official capacity, is a lawsuit against Bellevue, Nebraska.

To state a claim under 42 U.S.C. § 1983 against Bellevue, Plaintiff must identify a governmental policy or custom that was the "moving force" behind a constitutional violation that caused Plaintiff's alleged injury. *Schaffer v. Beringer*, 842 F.3d 585, 596 (8th Cir. 2016) (quoting *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978)); *Brockinton v. City of Sherwood, Ark.*, 503 F.3d 667, 674 (8th Cir. 2007). Plaintiff's complaint expressly alleges Bellevue had no policies for handling slug offenses or challenges to the seizure of property and the contents of any warrant application. "[A] municipality may not be held liable under § 1983 merely because it 'failed to implement a policy

---

[1] As of 2020, the population of Bellevue was approximately 64,000, making it a first class city. Neb. Rev. Stat. 16-101.

that would have prevented an unconstitutional act by an employee otherwise left to his own discretion.' " *Atkinson v. City of Mountain View, Mo.,* 709 F.3d 1201, 1216 (8th Cir. 2013) (quoting *Szabla v. City of Brooklyn Park, Minn.*, 486 F.3d 385, 390 (8th Cir. 2007)). When a plaintiff is suing a municipality for the lack of policies, supervision, or training that allegedly would have prevented a constitutional violation, the plaintiff must prove the municipality acted with deliberate indifference. *City of Canton v. Harris*, 489 U.S. 378, 389 (1989). *See also Mendoza v. United States Immigr. & Customs Enf't*, 849 F.3d 408, 420 (8th Cir. 2017). "Deliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 410 (1997). While Plaintiff alleges the defendants acted with malice and deliberate disregard of his rights, this conclusory allegation is not supported by allegations of fact. Plaintiff has not alleged facts supporting a finding that Bellevue had notice that it needed policies, supervision, or training to address Plaintiff's alleged constitutional violations and chose not to respond.

Plaintiff's complaint does not allege the existence of any Bellevue policy or custom that caused Plaintiff's injury, or that Bellevue was deliberately indifferent in failing to have a policy, custom, or officer supervision and training that would have averted a violation of Plaintiff's constitutional rights. Plaintiff has failed to state a claim against the BPD and Clary, in his official capacity.

## D. Claims against Clary, in his individual capacity

Plaintiff alleges Clary, in his individual capacity, instigated the search of Plaintiff's property. He alleges this was improper because although they are empowered to investigate fraud and the use of slugs under Nebraska law, the

U.S. Mint is vested with the authority to investigate coins imported from China. Filing No. 1 at 7-8.

Plaintiff alleges Clary presented a search warrant application to the court on October 11, 2025, without probable cause to "allege that the coins are forged or that there was some sort of criminal activity. . . ." Filing No. 1 at 4. Plaintiff alleges the warrant application stated Plaintiff dropped slugs into the Coinstar machine, and had the officers looked, they would have clearly seen that the coins were authentic. Filing No. 1 at 2, 4-5, 7.

But upon close review of the warrant application, Clary did not sign the warrant application, and the investigating officer did not state Plaintiff was in possession of slugs. *State v. Search Warrant, 24035482.168A24-5164,* CR 24 0001105 (October 11, 2024 Sarpy Cty. Dist. Ct.).[2] Rather, he "had an opportunity to examine some of the coins involved and saw that although they appeared to be legitimate U.S. Currency, they were severely damaged." Id. at 8. The allegations within Plaintiff's complaint do not contradict this statement. Plaintiff has failed to state a claim against Clary, in his individual capacity.

## E. Racial Profiling

Finally, Plaintiff makes a conclusory statement that he was singled out for criminal investigation based on race. There are no factual allegations supporting this claim.

## IV. CONCLUSION

The Court is required to dismiss a complaint, or any portion of it, that states a frivolous or malicious claim, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from

---

[2] The Court takes judicial notice of the state court records. *See Stutzka v. McCarville,* 420 F.3d 757, 761 n.2 (8th Cir. 2005) (court may take judicial notice of public records). Nebraska's judicial records may be retrieved on-line through the JUSTICE site, https://www.nebraska.gov/justice/case.cgi.

such relief. 28 U.S.C. §§ 1915(e)(2). Plaintiff's complaint fails to state a claim against any of the defendants. But rather than dismissing the complaint, the Court will grant Plaintiff leave to file an amended complaint.

Accordingly,

IT IS ORDERED

1. Plaintiff shall have until **November 19, 2025**, to file an amended complaint that sufficiently states a claim against the defendants. Failure to file an amended complaint within the time specified by the Court will result in the Court dismissing this case without further notice to Plaintiff.

2. The Court reserves the right to conduct further review of Plaintiff's claim pursuant to 28 U.S.C. §§ 1915(e) in the event he files an amended complaint.

3. The Clerk of Court is directed to set a pro se case management deadline using the following text: **November 19, 2025**: check for amended complaint.

4. The parties are bound by the Federal Rules of Civil Procedure and by the Local Rules of this Court. Plaintiff shall keep the Court informed of his current address at all times while this case is pending. Failure to do so may result in dismissal.

Dated this 20th day of October, 2025.

BY THE COURT:

Cheryl R. Zwart
United States Magistrate Judge