IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

ZEHAO YU,

                    Plaintiff,

          vs.

THE US MINT, GREG WEINMAN,
BELLEVUE NEBRASKA, a city; and
MICHAEL HOLM,

                    Defendants.

8:25CV426

MEMORANDUM  AND ORDER

This matter is before the Court on Plaintiff Zehao Yu's amended complaint filed on November 19, 2025. Filing 14. Plaintiff was granted leave to proceed in forma pauperis. The Court now conducts an initial review of Plaintiff's claims to determine whether summary dismissal is appropriate under 28 U.S.C. § 1915(e)(2).

## I. APPLICABLE  LEGAL STANDARDS  ON INITIAL  REVIEW

The Court is required to review in forma pauperis and prisoner complaints to determine whether summary dismissal is appropriate. *See* 28 U.S.C. § 1915(e); 28 U.S.C. § 1915A. The Court must dismiss a complaint or any portion of it that states a frivolous or malicious claim, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2).

"The essential function of a complaint under the Federal Rules of Civil Procedure is to give the opposing party 'fair notice of the nature and basis or grounds for a claim, and a general indication of the type of litigation involved.'" *Topchian v. JPMorgan Chase Bank, N.A.*, 760 F.3d 843, 848 (8th Cir. 2014)

(quoting *Hopkins v. Saunders*, 199 F.3d 968, 973 (8th Cir. 1999)). Plaintiffs must set forth enough factual allegations to "nudge[ ] their claims across the line from conceivable to plausible," or "their complaint must be dismissed." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 569-70 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

"A pro se complaint must be liberally construed, and pro se litigants are held to a lesser pleading standard than other parties." *Topchian*, 760 F.3d at 849 (internal quotation marks and citations omitted). This means that "if the essence of an allegation is discernible, even though it is not pleaded with legal nicety, then the district court should construe the complaint in a way that permits the layperson's claim to be considered within the proper legal framework." *Stone v. Harry,* 364 F.3d 912, 915 (8th Cir. 2004). However, even pro se complaints are required to allege facts which, if true, state a claim for relief as a matter of law. *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980).

## II. SUMMARY OF AMENDED COMPLAINT

Plaintiff sues Bellevue, Nebraska; Michael Holm; in his official and individual capacity; the U.S. Mint; and Greg Weinman, in his official and individual capacity. Filing 14. The following summarizes Plaintiff's allegations.

Plaintiff was an international student from China who came to Nebraska to pursue an education. Because of the events described below, he withdrew

2

from school and initially moved to Spain.[1] Filing 14 at 9. His father lives in China and works at a metal recycling factory which receives containers of waste from the United States for recycling. As a result of the factory's mechanical sorting process, U.S. coins discarded in the United States are collected in China. Prior to October 2024, Plaintiff's father gathered these U.S. coins and shipped them to Plaintiff in the United States. Plaintiff then redeemed the coins for cash using a Coinstar machine at a Walmart Supercenter in Bellevue, Nebraska. Although the coins were often damaged, they were authentic. Filing 14 at 1, 3, 8.

The U.S. Mint has investigated the mass redemption of coins, targeting importers of coins salvaged from the recycling factories in China. The U.S. Mint has complained that coins coming from China are forged. In 2010, at the request of the U.S. Mint, the Office of the Inspector General stopped and investigated random trucks en route to the U.S. Mint, and it sent agents to China to find evidence of coin manufacturing. It found no evidence of counterfeiting. Filing 14 at 4, 16-17.

The U.S. Mint contracts with private operators such as Coinstar, which operates machines that pay cash for deposited coins. Coinstar submits the coins deposited in its machines to the U.S. Mint, which redeems the old coins, then melts them down and uses the raw materials to create new coins. Filing 14 at 4. The U.S. Mint Police monitors imports from China, and Weinman has hired quack experts to fabricate lab reports of the coins' metallurgical composition. He has created a blacklist of recycling factories in China that can no longer import U.S. coins, intending to crush the coin importers by

---

[1] Plaintiff is required to keep this Court apprised of his current address. While Plaintiff mails documents to the Court for filing, the Court's mailings to his last known address in China—the address Plaintiff recites in his filings—have been returned.

confiscating imported coins, making false arrests, and then forcing the intended coin recipients to file court proceedings to retrieve their coins. Filing 14 at 3-4, 16.

On October 7, 2024, Plaintiff went to a Walmart Supermarket in Bellevue, Nebraska and started dropping coins into the Coinstar machine. A Walmart employee approached Plaintiff, complained that Plaintiff's coins jammed the machine, and claimed the store incurs losses when the Coinstar machine is jammed and nonoperational. The employee stated WalMart customers had complained about receiving the coins, but pursuant to contract terms, Coinstar coins are sent to the U.S. Mint and not used in customer transactions. Filing 14 at 4, 14.

A Bellevue Police Department (BPD) officer arrived at WalMart and handed Plaintiff a restraining order which prohibited him from returning to the premises of the Walmart Supermarket for a period of one year—until Oct. 7, 2025. The police confiscated $1,600 worth of coins in Plaintiff's possession that he had intended to deposit into the Coinstar machine. Plaintiff alleges he dropped only real U.S. coins in the Coinstar machine, not counterfeit coins or "slugs"—pieces of cheap metal, usually with no embossing, that are dropped into a machine to pass off as a real coin. Filing 14 at 4-5.

Holm, a BPD detective, applied for a search warrant on October 11, 2024.[2] The warrant was issued by a Sarpy County judge, and executed on

---

[2] The Court takes judicial notice of the state court records. *See Stutzka v. McCarville*, 420 F.3d 757, 761 n.2 (8th Cir. 2005) (court may take judicial notice of public records). Nebraska's judicial records may be retrieved on-line through the JUSTICE site, https://www.nebraska.gov/justice/case.cgi.

While Plaintiff alleges Holms "invented the 'dropping slugs' allegation" in crafting the warrant application, Filing 14 at 5, the Court has reviewed the warrant applications to search Plaintiff's property, and the word "Slugs" appears only when referencing the title of the Nebraska criminal statute, "Making, Using, or Uttering Slugs . . .," Neb. Rev. State. 28-607. The application does not say Plaintiff had slugs in his possession when he was arrested at the WalMart.

October 18, 2024. During the search of Plaintiff's apartment, the police seized $6,000 in banknotes, $44,000 in coins, and the key to a safe deposit box at InterState Bank. The police used the key to seize $59,439 from the safe deposit box. Plaintiff was arrested. Filing 14 at 5-6.

Plaintiff claims Weinman, an attorney for the U.S. Mint, devised policies and techniques to fabricate false probable cause for warrant applications and "on information and belief," Weinman and the Mint were working "in concert" with the BPD to seize Plaintiff's coins and currency. Plaintiff claims the defendants agreed BPD would perform the investigation as a proxy of the US Mint, thereby avoiding the Mint's obligations and accountability under the Civil Asset Forfeiture Reform Act (CAFRA), 18 U.S.C. § 981.

Plaintiff alleges there was no basis for the warrants because Holm failed to test the coins before asking for the warrant, and the officers who visually inspected them stated the coins were severely damaged but appeared to be genuine.[3] Filing 14 at 3-5, 9-10.

Plaintiff alleges Bellevue has no authority to investigate counterfeiting and it does not have the facilities and equipment to test coins before claiming they are suspected of being counterfeit. These responsibilities are within the Mint's powers and expertise. Plaintiff claims:

> This general suspicion of counterfeit, without independent "homework" or verification was made prior to requesting a warrant solely because Plaintiff is Chinese. If Plaintiff was a snow white Nebraskan dropping coins at Walmart, it is most likely that Holms, his boss Clary and the entire BPD would have been more careful, and more prudent in ascertaining basic facts before

---

[3] Plaintiff alleges Holm fabricated allegations of a crime, relying on claims of a fantom network of Chinese forgers of coins. Filing 14 at 9. The state warrant applications discuss Plaintiff's receipt of coins from his father in China and Plaintiff's retention and redemption of those coins. Holm does not allege the existence of a Chinese forgery network. He discloses his intent to investigate whether the coins were counterfeit and the timeline and scope of fraudulent activities.

5

> invading someone's home, car, safe deposit box and arresting him,
> all when not even one coin was tested.

Filing 14 at 9.

Plaintiff called the police on October 29, 2024, to demand that his seized funds be returned. He was told that the seized coins were being transferred to the U.S. Mint, and it "will take time" to complete testing. From Plaintiff's father's experience, U.S. Mint testing can take a year or more. Filing 14 at 15.

On October 30 or 31, 2024, Plaintiff moved to quash the search warrant, demanded the return of his property, and asked the court to vacate the restraining order barring him from entering Walmart. The court did not set a hearing on his motion. Filing 14 at 2-3, 6.

Plaintiff seeks recovery against the defendants for illegally seizing his property. Filing 14 at 12. He seeks recovery from Holm and Bellevue under 42 U.S.C. § 1983 for violating his Fourth Amendment rights when they seized his personal property without a valid warrant; exceeded the scope of the warrant when they searched the safe deposit box; raided his home, placed a lien on his bank accounts, and took all his money; and delayed answering his questions and returning his property. Plaintiff claims Holm and Bellevue failed to adopt proper and clear policies for the handling of slug offenses, and they failed to train officers on how to distinguish slugs from old and mutilated coins, properly handle offenses involving slugs, and investigate abuse of Coinstar machines. Plaintiff alleges they failed to adopt a clear policy or custom for contesting the seizure of property and challenging the contents of warrant applications authorizing the seizure. Filing 14 at 8-12.

Plaintiff alleges all defendants are liable for intentionally converting his property. Filing 14 at 12-13. He alleges he was falsely arrested on Oct. 18, 2024, and falsely incriminated in criminal activities (such as forgeries, use of

6

slugs and fraud on Walmart). Filing 14 at 13-16. Finally, Plaintiff alleges a right to recover under *Bivens v. Six Unknown Named Agents*, 403 US 388 (1971), because the U.S. Mint targets importers of coins salvaged from the recycling factories in China. He claims the U.S. Mint defendants maliciously developed procedures for suspected imported coins from China, and those procedures are designed to ruin persons such as Plaintiff by knowingly and willingly impoverishing them, and then not returning the seized property or even stating whether the coins seized are believed to be authentic or counterfeit. Filing 14 at 13-19. Plaintiff alleges the defendants are "motivated by deterrence, hoping that what they are doing to a small student in Nebraska, will pass by word of mouth to all those who may think of redeeming coins via Coinstar machines." Filing 14 at 13.

Plaintiff claims the defendants acted with malice, recklessness, and total and deliberate disregard of his contractual and personal rights, and due to the defendants' seizure of his property, he lost his livelihood and had to drop out of college. He seeks compensation for the coins seized on October 7, 2024, the items seized during execution of search warrants and from the bank safe deposit box on October 18, 2024, and compensation for pain and suffering resulting from the false arrest and illegal seizure of the property. Filing 14 at 11-12.

### III. DISCUSSION

#### A. Constitutional Claims

Plaintiff seeks recovery against the defendants under 42 U.S.C. § 1983 and *Bivens*. He alleges the defendants are responsible for unlawfully seizing his coins, cash, and personal property, unreasonably prolonging the seizure of his property, and failing to return the seized property or pay just compensation. He claims there is no real mechanism for redress in the state

7

courts; a hearing has never been set on the motion to quash that he filed ten days after the initial seizure of his property. Liberally construed, Plaintiff alleges he has not heard from the defendants concerning his seized property or any criminal charges since October of 2024.

A "seizure" of property occurs when there is a meaningful interference with an individual's possessory interests in that property. *Soldal v. Cook Cnty., Ill.*, 506 U.S. 56, 61 (1992). Here, Plaintiff alleges coins were seized without a warrant when he was approached by a BPD officer at WalMart, and substantially more property was seized thereafter when search warrants were executed. When the government seizes property, the Fourth Amendment requires that both its initial seizure and its continued retention be reasonable. *Honda Lease Trust v. Malanga's Automotive*, 152 F.4th 477, 489 (3d Cir. 2025) (collecting cases). An owner or possessor of property may pursue a case under 42 U.S.C. § 1983 when his or her property is seized in violation of the Fourth Amendment. *Soldal,* 506 U.S. at 68-69. Here, Plaintiff has alleged his property was seized 17 months ago, no charges or forfeiture proceedings have been filed, and the property has not been returned. These allegations support a plausible claim that his property has been seized by the government for an unreasonably long period of time in violation of the Fourth Amendment.

"Certain wrongs affect more than a single right and, accordingly, can implicate more than one of the Constitution's commands." *Soldal,* 506 U.S. at 70. In the context of seized property, where a procedure to challenge the government's seizure is nonexistent, inadequate, or unduly delayed, the seizure may violate both the Fourth Amendment and the Due Process Clause. *Honda Lease Tr.,* 152 F.4th at 488. When assessing whether delayed return of seized property violated a suspect's due process property rights, the Court considers whether the delay was uncommonly long, whether the government

8

or the suspect is more to blame for that delay, whether the suspect demanded a prompt return, and whether he was prejudiced by the delay. *United States v. Eight Thousand Eight Hundred & Fifty Dollars ($8,850) in U.S. Currency*, 461 U.S. 555, 564 (1983) (holding the balancing inquiry in *Barker v. Wingo*, 407 U.S. 514 (1972) is the appropriate framework for determining if due process rights were violated by the delay between the seizure of currency and the filing of forfeiture proceedings by the government); *State v. One Thousand Nine Hundred Forty-Seven Dollars in U.S. Currency*, 583 N.W.2d 611 (Neb. 1998) (applying the *Barker* factors and finding a two-year delay in holding a forfeiture hearing with regard to cash seized from the claimant's apartment violated his due process rights).

Here, Plaintiff alleges his coins, cash, and property were seized by law enforcement and not returned. Under Nebraska law, the appropriate and exclusive forum for requesting the return of the seized property is the District Court in the county where the property was seized. Neb. Rev. Stat. § 29-818. But here, Plaintiff is requesting damages under 42 U.S.C. § 1983, not the return of the property. So, Neb. Rev. Stat. § 29-818 is not implicated and even assuming a criminal case is filed against Plaintiff someday, this federal litigation will not impact the availability of evidence for that prosecution. Neb. Rev. Stat. § 29-818 does not divest this Court of jurisdiction over Plaintiff's claim for damages under 42 U.S.C. § 1983 arising from an unreasonably prolonged seizure of his property.

When property is seized by the government, the person who owns or possesses the property is entitled to due process. *Coleman v. Watt*, 40 F.3d 255, 260 (8th Cir. 1994) (where law enforcement impounded the plaintiff's car, a judicial order setting a hearing seven days later violated due process). Based on the allegations in the amended complaint, Plaintiff has not had access to

his seized financial assets and other property obtained through execution of search warrants (phones, iPads, laptop, computer, etc.), for well over a year, and he has not been afforded a hearing regarding his seized property.[4] This failure, assumed to be true for the purposes of initial review of the amended complaint, raises a plausible claim that Plaintiff's due process rights have been violated.

Plaintiff's amended complaint sufficiently alleges a claim under 42 U.S.C. § 1983 for unreasonably prolonged retention of his seized property in violation of the Fourth Amendment, and for seizing and retaining Plaintiff's property in violation of his procedural and substantive due process rights. Plaintiff alleges he is entitled to damages for these alleged violations under 42 U.S.C. § 1983. He names the U.S. Mint and its legal advisor, Weinman, in his official and individual capacity, and Bellevue and its BPD officer, Holm, in his official and individual capacity.

### 1. Federal Defendants

A claim against Weinman, in his official capacity, is a claim against the U.S. Mint. *Kentucky v. Graham*, 473 U.S. 159, 166 (1985) ("[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity."). It is well settled that sovereign immunity bars a *Bivens* claim against the United States and its agencies. *F.D.I.C. v. Meyer*, 510 U.S. 471 (1994) (holding a *Bivens* claim cannot be brought against a federal agency); *Buford v. Runyon*, 160 F.3d 1199, 1203 (8th Cir. 1998). Plaintiff's claims

---

[4] Under Neb. Rev. Stat. § 29-822, "[a]ny person aggrieved by an unlawful search and seizure may move for return of the property so seized . . . any time *after* the information or indictment is filed."(emphasis added). And § 13-910 of the Nebraska Political Subdivisions Tort Claims Act (PSTCA), Neb. Rev. Stat. § 13-901 et seq. exempts any claim arising from "detention of any goods or merchandise by any law enforcement officer."

against the U.S. Mint and Weinman, in his official capacity, must be dismissed as barred by sovereign immunity.

However, a damage claim for violation of constitutional rights may be asserted against a federal agent, in his individual capacity, for conduct performed under color of federal authority. *Bivens,* 403 U.S. at 395. Plaintiff's complaint alleges Weinman "declared a war on the reimportation of U.S. coins found in the Chinese recycling factories." Filing 14 at 4. He claims Weinman promotes obtaining warrants with fabricated facts, and he advocates for using and relying upon three-dimensional testing methods that are not universally recognized in the scientific community. Plaintiff claims Weinman has instructed and authorized the Mint's lab personnel to publish articles about these new tests—as if they are universally accepted—and then include citations to the articles in the Mint's lab reports. Filing 14 at 4-5. Plaintiff alleges "upon information and belief" that Weinman directed "all agencies working with the Mint on the import of coins (customs, homeland security, secret service) to ignore CAFRA rules" and to delay testing. Filing 14 at 19.

Plaintiff's lawsuit must be based on what happened to <u>him</u>. Even if the Court accepts all his sweeping and conclusory allegations against Weinman as true, this case is not about Weinman's overall conduct or reputation. The Plaintiff is challenging the seizure and retention of *his* property at the time of his arrest and pursuant to state search warrants served thereafter. As to whether the amended complaint states a claim, only allegations underlying or explaining those specific events are relevant.

To that end, Plaintiff alleges "on information and belief" that Weinman and the U.S. Mint's Chief of Police spoke to BPD and convinced the BPD to investigate the case against Plaintiff, the goal being to delay return of coins to their rightful owners while retaining the right to pursue the case in federal

11

court if the evidence justified that transition. Filing 14 at 19. Plaintiff alleges that "based on information of belief," the U.S. Mint and Weinman were acting "in concert" with the BPD and using BPD as their "proxy to avoid duties under CAFRA." Filing 14 at 5. He seeks damages from Weinman, in his individual capacity, "for instructing BPD to go ahead with a Nebraska warrant based on bogus claims." Filing 14 at 19.

"[A]llegations pled on information and belief are not categorically insufficient to state a claim for relief where the proof supporting the allegation is within the sole possession and control of the defendant or where the belief is based on sufficient factual material that makes the inference of culpability plausible." *Ahern Rentals, Inc. v. EquipmentShare.com, Inc.*, 59 F.4th 948, 954 (8th Cir. 2023). But "[w]ithout some factual basis for the inference of liability or the reasonable belief that the information supporting such liability is in the sole possession of the defendant, pleadings made on information and belief cannot cure an otherwise threadbare complaint." *Id.* at 955.

Plaintiff's amended complaint contains no allegations that the U.S. Mint, any of its employees, or its legal adviser, Weinman, were personally involved in the act of physically seizing Plaintiff's property. But Plaintiff does allege BPD, Weinman, and the U.S. Mint acted "in concert." The information to support this allegation is in the sole possession of the U.S. Mint and/or Weinman, the actual search of Plaintiff's apartment was conducted with the assistance of Special Agents from the Internal Revenue Service – Criminal Investigation Division,[5] and after the seizure, BPD sent the coins to the U.S. Mint for testing. Based on these facts, Plaintiff's "information and belief" is sufficient to "nudge" his claim that Weinman was personally involved in the

---

[5] See footnote 2.

seizure of his property, though not physically present, "across the line from conceivable to plausible." *Twombly*, 550 at 569-70 The allegations also sufficiently support a claim that Weinman, in his individual capacity, has been personally involved in delaying the return of Plaintiff's property and orchestrating the investigation to deny Plaintiff's access to a post-deprivation hearing. Plaintiff has stated a Fourth and Fourteenth Amendment claim against Weinman, in his individual capacity.

### 2. City Defendants

Plaintiff is suing Bellevue, and BPD detective Holm, in his official and individual capacities. As previously explained, a claim against Holm, in his official capacity, is a claim against Bellevue. Whether a party, other than an individual or a corporation, has the capacity to be sued is determined "by the law of the state where the court is located." Fed. R. Civ. P. 17(b). Under Nebraska law, cities of the first class[6] may sue and be sued, Neb. Rev. Stat. §§ 16–201.

To state a claim under 42 U.S.C. § 1983 against Bellevue, Plaintiff must identify a governmental policy or custom that was the "moving force" behind a constitutional violation that caused Plaintiff's alleged injury. *Schaffer v. Beringer*, 842 F.3d 585, 596 (8th Cir. 2016) (quoting *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978)); *Brockinton v. City of Sherwood, Ark.*, 503 F.3d 667, 674 (8th Cir. 2007). Plaintiff's complaint alleges Bellevue adopted no policies for handling slug offenses or professionally identifying slugs, and it failed to train its employees on such offenses. He further alleges Bellevue failed to adopt a policy or custom affording an opportunity to contest seizures of property by the police. Filing 14 at 10.

---

[6] As of 2020, the population of Bellevue was approximately 64,000, making it a first class city. Neb. Rev. Stat. § 16-101.

"[A] municipality may not be held liable under § 1983 merely because it 'failed to implement a policy that would have prevented an unconstitutional act by an employee otherwise left to his own discretion.' " *Atkinson v. City of Mountain View, Mo.,* 709 F.3d 1201, 1216 (8th Cir. 2013) (quoting *Szabla v. City of Brooklyn Park, Minn.*, 486 F.3d 385, 390 (8th Cir. 2007)). When a plaintiff is suing a municipality for the lack of policies, supervision, or training that allegedly would have prevented a constitutional violation, the plaintiff must prove the municipality acted with deliberate indifference. *City of Canton v. Harris*, 489 U.S. 378, 389 (1989). *See also, Mendoza v. United States Immigr. & Customs Enf't*, 849 F.3d 408, 420 (8th Cir. 2017). "Deliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 410 (1997). While Plaintiff alleges the defendants acted with malice and deliberate disregard of his rights, this conclusory allegation is not supported by allegations of fact. Plaintiff has not alleged facts supporting a finding that Bellevue had notice that it needed policies, customs, supervision, or training to address Plaintiff's alleged constitutional violations, but it chose not to.

Plaintiff's complaint does not allege the existence of any Bellevue policy or custom that caused Plaintiff's injury, or that Bellevue was deliberately indifferent in failing to have a policy or custom, or officer supervision and training that would have averted a violation of Plaintiff's constitutional rights. Plaintiff has failed to state a claim against Bellevue.

Plaintiff alleges Holm, in his individual capacity, prepared and signed the warrant applications which led to the seizure of his property. He alleges Holm lied in the application, but he fails to plausibly identify any facts which were false or any material information that was concealed. He claims Holm

14

lacked the authority to investigate coins imported from China, stating the U.S. Mint is vested with the authority to perform such investigations. Filing 14 at 7-8. There is nothing that forecloses a local law enforcement officer from investigating a potential violation of federal criminal law.

Plaintiff further claims he was racially profiled and had he been a "snow white" Nebraskan, Holm would have been more careful and investigated more thoroughly before seizing his property and arresting him. Filing 14 at 9. This conclusory and speculative allegation, and the similar allegations sprinkled throughout the amended complaint, does not support a claim of racial profiling in violation of Plaintiff's right to equal protection. *Saunders v. Thies*, 38 F.4th 701, 714 (8th Cir. 2022).

Under Nebraska law, Plaintiff's seized property remains in the custody of the officer who seized it. Neb. Rev. Stat. § 29-818. Liberally construed, Plaintiff alleges that as the detective spearheading the investigation, Holm is responsible for the delay in either having Plaintiff criminally charged or exonerating him and returning his property, and is responsible for the lack of any post-deprivation hearing. Plaintiff has stated a Fourth and Fourteenth Amendment claim against Holm in his individual capacity.

## B. State Law Claims

Plaintiff's amended complaint asserts a right to recover under Nebraska common law for false arrest and conversion. Such claims against the U.S. Mint and Weinman, in his official capacity, are barred by sovereign immunity, and there are no allegations that Weinman, in his individual capacity, arrested Plaintiff or assumed custody and control of the seized property.

As to the claims against the Bellevue, the Political Subdivisions Tort Claim Act, PSTCA), Neb. Rev. Stat. §§ 13-901-13-928, provides the exclusive means for maintaining a tort claim against a political subdivision and its

15

employees. *Edwards v. Douglas Cnty.*, 953 N.W.2d 744, 759 (Neb. 2021). However, Plaintiff has not alleged that he complied with the prerequisites for filing suit set forth in §§ 13-905 and 13-906 of the PSTCA. Moreover, while the Act waives immunity for tort claims against a city or county, there are exceptions. As relevant to this case, false arrest claims and claims arising from detention of property by law enforcement are exempted from the Act. Neb. Rev. Stat. §§ 13-910 (5) and (7). So, Plaintiff's common law false arrest and conversion claims against Bellevue are barred by immunity. *See e.g.*, *Policky v. City of Seward, Neb.*, 433 F. Supp. 2d 1013 (D. Neb. 2006) (interpreting Nebraska Political Subdivision Tort Claims Act and holding false arrest claim against a municipality was barred).

## IV. CONCLUSION

The Court is required to dismiss a complaint, or any portion of it, that states a frivolous or malicious claim, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. §§ 1915(e)(2). Plaintiff's claims against the U.S. Mint and Weinman, in his official capacity are barred by sovereign immunity. Plaintiff's state common law claims are barred. Plaintiff has failed to state a claim against Bellevue. Plaintiff has stated a § 1983 claim against Weinman, in his individual capacity, and against Holm, in his individual capacity for violation of Plaintiff's Fourth and Fourteenth Amendment rights.

Accordingly,

IT IS ORDERED:

1.    Plaintiff's claims under 42 U.S.C. § 1983 against Weinman, in his individual capacity, and against Holm, in his individual capacity, may proceed.

2.     Plaintiff's claims against the U.S. Mint; Bellevue, Nebraska; Weinman, in his official capacity, and Holm, in his official capacity are dismissed.

3.     The Clerk of Court is directed to terminate the U.S. Mint and Bellevue, Nebraska as defendants. The Clerk of Court is further directed to update the caption to reflect that Weinman, in his individual capacity, and Holm, in his individual capacity, are the only defendants.

4.     The Clerk of Court is directed to complete 3 summons forms and 3 USM-285 forms for service on Greg Weinman using the following addresses:

Greg Weinman
United States Mint Headquarters
801 9th Street, N.W.
Washington, DC 20220-0012

Civil Process Clerk
U.S. Attorney's Office
1620 Dodge St., Suite 1400
Omaha, NE 68102

Pam Bondi
Attorney General
U.S. Department of Justice
950 Pennsylvania Ave. NW
Washington, D.C. 20530

5.     The Clerk of Court is directed to complete a summons form and a USM-285 form for service on Michael Holm using the following address:

Michael Holm
Bellevue Police Department
1510 Wall St.
Bellevue, Nebraska 68005

6.     The Clerk of Court shall forward the summons forms and USM-285 forms for each named Defendant in their individual capacity, together with

17

a copy of the amended complaint (Filing 14) and a copy of this Memorandum and Order, to the Marshals Service.

7.     Using the addresses in paragraphs 4 and 5 above, the Marshals Service shall serve:

- Greg Weinman, Attorney General Pam Bondi, and the Civil Process Clerk for the Nebraska Attorney General's Office **by registered or certified mail**.

- Michael Holm using any of the following methods: residence, certified mail, or designated delivery service. See Federal Rule of Civil Procedure 4(e); Neb. Rev. Stat. § 25-508.01.

8.     For service by certified mail or designated delivery service, the Marshals Service shall serve the defendant within ten days of the Clerk of the Court issuing and forwarding the summons to the Marshals Service. *See* Neb. Rev. Stat. § 25-505.01(1).

9.     The United States Marshal shall serve all process in this case without prepayment of fees from Plaintiff.

10.     Federal Rule of Civil Procedure 4(m) requires service of the complaint on a defendant within 90 days of filing the complaint. However, Plaintiff is granted, on the Court's own motion, an extension of time until 90 days from the date of this order to complete service of process.

11.     Plaintiff is hereby notified that failure to obtain service of process on Greg Weinman, in his individual capacity, and Michael Holm, in his individual capacity, within 90 days of the date of this order may result in dismissal of this matter without further notice. A defendant has 21 days after receiving the summons to answer or otherwise respond to a complaint.

12.     The Clerk of Court is directed to set a pro se case management deadline in this case using the following text: **July 1, 2026**: service of process to be completed.

18

13.    The parties are bound by the Federal Rules of Civil Procedure and by the Local Rules of this Court. Plaintiff shall keep the Court informed of his current address at all times while this case is pending. Failure to do so may result in dismissal.

14.    Because this non-prisoner case is proceeding to service of process, and at the direction of the court, this case is removed from the pro se docket. The Clerk of Court shall randomly assign new judges to this case and shall request a reassignment order from the Chief Judge.

Dated this 31st day of March, 2026.

BY THE COURT:

John M. Gerrard
Senior United States District Judge