ZEHAO YU,

               Plaintiff,

    v.

GREG WEINMAN, Individually; AND
MICHAEL HOLM, Individually,

               Defendants.

8:25CV426

DEFENDANT GREG WEINMAN'S
BRIEF IN SUPPORT OF HIS MOTION
TO DISMISS, OR IN THE
ALTERNATIVE, MOTION FOR
SUMMARY JUDGMENT

## **INTRODUCTION**

Plaintiff Zehao Yu seeks to hold Greg Weinman, an attorney with the United States Mint, personally liable for damages Mr. Yu allegedly sustained in a chain of events that started in October 2024. The reasons for naming Mr. Weiman as a defendant are entirely unclear. There is no good-faith basis for his inclusion and maintaining suit against him is baseless. Mr. Yu's allegations against Mr. Weinman are not merely implausible; they are wholly unsupported by any factual allegations suggesting personal involvement. The Amended Complaint relies almost exclusively on speculation and assertions made "upon information and belief" without identifying any factual basis for those beliefs. Nevertheless, Mr. Yu seeks to impose personal liability on a federal attorney who, as established by declaration, had no involvement whatsoever in the events at issue. Now, Mr. Weinman, by and through his attorneys, are required to obligate their time and effort to draft this dismissal motion, and the Court must likewise devote its time to addressing claims that lack any merit.

Mr. Yu has filed suit against many parties, and after review by the Court, the operative Amended Complaint was allowed to continue to service under some claims made against Mr. Weinman, and Bellevue, Nebraska Police Department (BPD) Captain Michael Holm. (Filing No.

19). The crux of Mr. Yu's lawsuit concerns his attempted redemption of coins at a coin-cashing machine located inside a Walmart in Bellevue, Nebraska and events that followed. Mr. Yu claims that, following an interaction with a BPD officer while at Walmart, the BPD officer seized approximately $1,600 in coins from him. BPD then commenced an investigation which resulted in the seizure of an additional $6,000 in banknotes, $44,000 in coins, $59,439 (unknown medium), and a safe deposit key. This property has not been returned to Mr. Yu.

Mr. Yu, inexplicably, and based apparently only upon "information and belief," has sued Mr. Weinman personally. The Court determined, after preliminary review, that Mr. Yu has "stated a Fourth and Fourteenth Amendment claim[1]" against Mr. Weinman in his individual capacity. (Filing No. 19, p. 13). The theories underlying these "information and belief" claims are twofold: 1) Mr. Weinman, although not physically present, was personally involved in the seizure of his property; and 2) Mr. Weinman has been personally involved in delaying the return of his property and orchestrating the investigation to deny him access to a post-deprivation hearing. (Filing No. 19, pp. 12-13).

Despite his casting of allegations, Mr. Yu's lawsuit should be dismissed for multiple reasons. First, this Court lacks personal jurisdiction over Mr. Weinman. He has not had any involvement in this case, nor has he had any connections to District of Nebraska. Dismissal is therefore proper under Fed. R. Civ. P. 12(b)(2). Second, even if this Court were to find it has personal jurisdiction over Mr. Weinman, this Court should not extend a judicially implied *Bivens*

---

[1]Mr. Yu's Fourteenth Amendment claim against Mr. Weinman, a federal official, is improper and must fail. The commands of the Fourteenth Amendment are addressed only to the states and to those acting under color of state authority; the actions of the federal government and its officers are beyond the purview of the amendment. *Ramirez v. Postmaster Gen.*, No. 4:04CV3258, 2005 WL 8176038, at *1 (D. Neb. Mar. 11, 2005) *citing District of Columbia v. Carter*, 409 U.S. 418, 424 (1973).

remedy to this new context and therefore dismissal is proper, with prejudice, pursuant to Fed. R. Civ. P. 12(b)(6). Third, assuming Mr. Yu's claims can overcome both hurdles, dismissal is still proper, in the alternative, as Mr. Weinman is entitled to qualified immunity and the claims against him must be dismissed, with prejudice, pursuant to Fed. R. Civ. P. 12(b)(6) or alternatively pursuant to Fed. R. Civ. P. 56.

### STATEMENT OF FACTS

Mr. Weinman accepts as true, for purposes of this motion, the nonconclusory allegations made in Mr. Yu's Amended Complaint. *See Schicker v. Klenda*, 442 F. Supp. 3d 1166, 1169 (D. Neb. 2020). Mr. Weinman reserves the right to challenge any of the factual averments in the Amended Complaint, as well as any factual omission from that pleading, should this matter progress beyond the instant motion. The following statements are either derived from the allegations of the Amended Complaint (Filing No. 14) or the Declaration of Greg Weinman.

### Mr. Weinman's background

1.      Greg Weinman is currently employed as the Deputy Chief Counsel for the United States Mint, a position he has held since June 2024. (Filing No. 41, Declaration of Greg Weinman, ¶ 2).

2.      Since December 2024, Mr. Weinman has been serving as the Acting Chief Counsel for the United States Mint. (Filing No. 14, ¶ 14; Filing No. 41, Declaration of Greg Weinman, ¶ 3).

3.      Mr. Weinman's business office is located in Washington, D.C. (Filing No. 41, Declaration of Greg Weinman, ¶¶ 2-3).

4. Prior to becoming Deputy Chief Counsel, he was employed by the United States Mint as a Senior Attorney and held that position from September 1997 until June 2024. That office was also located in Washington D.C. (Filing No. 41, Declaration of Greg Weinman, ¶ 4).

5. Since April 2024, Mr. Weinman has maintained his primary residence in Virginia, while also maintaining a residence in the District of Columbia since January 2019. He resided in Maryland from March 1998 until January 2019. (Filing No. 41, Declaration of Greg Weinman, ¶¶ 6-8).

6. Mr. Weinman has never resided in the State of Nebraska and has never owned property, maintained an office, held a mailing address, or maintained any financial accounts in Nebraska. (Filing No. 41, Declaration of Greg Weinman, ¶ 10).

7. Since attaining the age of majority, Mr. Weinman has not visited the State of Nebraska. (Filing No. 41, Declaration of Greg Weinman, ¶ 11).

**Facts Alleged in the Amended Complaint**

8. On October 7, 2024, Mr. Yu attempted to redeem coins at a "Coinstar" machine located in a Walmart in Bellevue, Nebraska. (Filing No. 14, ¶ 17).

9. While there, a Walmart employee called the police which resulted in the BPD officer giving Mr. Yu a "Ban and Bar Letter" forbidding him from returning to the Walmart for a period of one year. (Filing No. 14, ¶ 17).

10. The responding BPD officer also seized $1,600 from Mr. Yu, without a warrant and without a receipt. (Filing No. 14, ¶ 19).

11. Four days later, on October 11, 2024, co-defendant, Bellevue Police Detective, Michael Holm, petitioned a "Nebraska District Court in Bellevue" for a search warrant. Detective

Holm invented the "dropping slugs" allegation. This warrant was executed on October 18, 2024. (Filing No. 14, ¶ 18).

12.    As a result of the warrant execution, BPD took items, including but not limited to about $6,000 in banknotes and $44,000 in coins. (Filing No 14, ¶ 19).

13.    That same day, BPD took $59,439 from a safe deposit box at the Interstate Bank using a key that was found in Mr. Yu's apartment. (Filing No. 14, ¶ 19).

14.    Mr. Yu was arrested on October 18, 2024. (Filing No. 14, ¶ 19).

15.    Mr. Weinman is the legal advisor devising the policies and techniques of fabricating false probable cause, avoiding testing of seized coins, and instructing BPD how to carry out Mint objectives. (Filing No. 14, ¶ 14).

16.    Mr. Weinman acted in tandem with John P. Brawdy, the Chief of the US Mint Police, and together they responded to Detective Holm and Chief Clary's request to decide who shall proceed with the investigation, Bellevue or the Mint. (Filing No. 14, ¶ 14).

17.    Mr. Weinman acted in tandem with Brawdy and directed Detective Holm and Chief Clary to proceed as a prosecution of usage of "slug"[.] (Filing No. 14, ¶ 14).

18.    Mr. Weinman collaborated with the Mint and BPD to decide that BPD would keep the currency as if BPD was conducting an investigation, thus artificially exempting both of them from CAFRA (Civil Asset Forfeiture Reform Act). (Filing No. 14, ¶ 68).

19.    "Upon information and belief", Mr. Weinman has directed all agencies working with the U.S. Mint on the import of coins to ignore CAFRA rules, delay testing, and invent testing methods. (Filing No. 14, ¶ 91).

20.    "Upon information and belief", within 14 days "from the altercation" at Walmart, the Chief of the Bellevue Police Department called Mr. Weinman to consult with him on the case,

and Mr. Weinman instructed the Chief to obtain a warrant in state court and fabricate "the suspicion of the 'use of slugs'". (Filing No. 14, ¶¶ 92, 94).

21. Mr. Weinman consults in such a way that the U.S. Mint has BPD acting as its proxy, while Mr. Weinman "retains to (sic) privilege of pulling the case out of the State police and into a federal realm, yet enjoying the bypass of the CAFRA rules to the maximum." (Filing No. 14, ¶ 92).

22. "Upon information and belief", Mr. Weinman and Bellevue acted in concert and "launched patently false arrest and false seizures of shipments from China to deter exporters from redeeming coins and stopping their importation." (Filing No. 14, ¶ 16).

23. On or about October 30, 2024, Mr. Yu petitioned the Nebraska State Court to quash the search warrant and declare it null and void, and as a result return all seized property to him, and to vacate the restraining order barring him from the Walmart premises. (Filing No. 14, ¶ 20).

24. Despite filing this motion, and it being assigned a case number, the motion has not been heard in Nebraska State Court. (Filing No. 14, ¶¶ 5-7).

25. Mr. Yu claims damages from Mr. Weinman, in his personal capacity, for instructing BPD, "to go ahead with a Nebraska warrant cased (sic) on bogus claims." (Filing No. 14, ¶ 94).

26. On November 19, 2025, Mr. Yu filed an Amended Complaint. (Filing No. 14). As against Mr. Weinman, he seeks judgment awarding him $350,000 and/or compensatory damages in an amount to be determined at trial, plus reasonable attorney fees.

## **Facts Established By Mr. Weinman's Declaration**

In the alternative, Mr. Weinman offers the following facts in support of his Motion for Summary Judgment.

27. Mr. Weinman has never traveled to Nebraska for any work-related purpose connected to the events or allegations in this lawsuit. (Filing No. 41, Declaration of Greg Weinman, ¶ 12).

28. Mr. Weinman has not directed, authorized, instructed, or encouraged any person in Nebraska or elsewhere to take any action regarding Mr. Yu. (Filing No. 41, Declaration of Greg Weinman, ¶ 13).

29. Mr. Weinman has never taken any action from Washington, D.C. or elsewhere with the intent or expectation of causing effects in Nebraska or anywhere else concerning Mr. Yu. (Filing No. 41, Declaration of Greg Weinman, ¶ 14).

30. Mr. Weinman has never participated in any of the events alleged in Mr. Yu's Amended Complaint. (Filing No. 41, Declaration of Greg Weinman, ¶ 15).

31. Mr. Weinman has never participated directly or indirectly in any of the events alleged to have occurred in Nebraska or elsewhere. (Filing No. 41, Declaration of Greg Weinman, ¶ 16).

32. Mr. Weinman has never engaged in any conduct purposely directed at the State of Nebraska that relates in any way to Mr. Yu's claims. (Filing No. 41, Declaration of Greg Weinman, ¶17).

33. Mr. Weinman has not made or received any reports, emails, phone calls, or other communications concerning Mr. Yu or the events alleged in the Amended Complaint before he became aware of this lawsuit. (Filing No. 41, Declaration of Greg Weinman, ¶18).

## PROCEDURAL BACKGROUND

Mr. Yu initiated this lawsuit on June 27, 2025, filing claims against numerous defendants, including Mr. Weinman and other U.S. Mint employees (Filing No. 1). On October 20, 2025,

Magistrate Judge Cheryl Zwart conducted a summary review of the complaint under 28 U.S.C. § 1915(e)(2) (Filing No. 11). In that review, the Court identified only one allegation directed at Mr. Weinman – namely, that "Weinman is the legal advisor devising the policies and techniques of fabricating false probable cause, avoiding testing of seized coins, and instructing the Bellevue Police how to carry out Mint objectives." (Filing No. 11, p. 8). Magistrate Judge Zwart concluded that, due to numerous deficiencies, the complaint failed to state a claim against any defendant, but granted Mr. Yu leave to amend. *Id.* at p. 12.

Mr. Yu filed an Amended Complaint on November 19, 2025, again naming Mr. Weinman in his individual capacity and the U.S. Mint, and adding new defendants: the City of Bellevue, Nebraska, and Michael Holm in his individual capacity. (Filing No. 19). On March 31, 2026, Senior United States District Judge, John M. Gerrard, conducted a summary review of the Amended Complaint pursuant to 28 U.S.C. § 1915(e)(2) (Filing No. 13). After review of the facts, the Court noted the nature of Mr. Yu's "information" and "belief" claims against Mr. Weinman. Nonetheless, the Court allowed two discrete claims to proceed based on Mr. Yu's allegations that Mr. Weinman:

1. Was personally involved in the seizure of Mr. Yu's property, though not physically present; and

2.  Has been personally involved in delaying the return of Mr. Yu's property and orchestrating the investigation to deny Mr. Yu access to a post-deprivation hearing.

Based upon these allegations, the Court concluded Mr. Yu had stated a Fourth and Fourteenth Amendment claim against Mr. Weinman, in his individual capacity.

## LEGAL STANDARDS

### I. PERSONAL JURISDICTION – FED. R. CIV. P. 12(b)(2)

Mr. Yu may pursue individual capacity claims against Mr. Weinman in the District of Nebraska only if he can demonstrate that Mr. Weinman is subject to personal jurisdiction in this forum. *K-V Pharm. Co. v. J. Uriach & CIA, S.A.*, 648 F.3d 588, 591–92 (8th Cir. 2011); *Dever v. Hentzen Coatings, Inc.*, 380 F.3d 1070, 1072 (8th Cir. 2004); Fed. R. Civ. P. 12(b)(2). Mr. Yu has the burden of pleading and proving facts establishing jurisdiction. *K-V Pharm.*, at 591-92. Because personal jurisdiction is in controversy, Mr. Yu must establish facts supporting the exercise of personal jurisdiction. *Morningside Church, Inc. v. Rutledge*, 9 F.4th 615, 619 (8th Cir. 2021). Plaintiff's prima facie showing that personal jurisdiction exists "must be tested, not by pleadings alone, but by affidavits and exhibits supporting or opposing the motion." *K-V Pharm.*, 648 F.3d at 592. The Court views the evidence in a light most favorable to the plaintiff. *Whaley v. Esebag*, 946 F.3d 447, 451 (8th Cir. 2020).

### II. FAILURE TO STATE A CLAIM – FED. R. CIV. P. (12)(b)(6)

In considering a Fed. R. Civ. P. 12(b)(6) motion to dismiss, the Court must accept all factual allegations of the complaint as true and determine whether the allegations show that the plaintiff is entitled to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1964-65, 167 L. Ed. 2d 929 (2007). In reviewing such motion, the Court "may consider the pleadings themselves, materials embraced by the pleadings, exhibits attached to the pleadings, and matters of public record." *Humphrey v. Eureka Gardens Pub. Facility Bd.*, 891 F.3d 1079, 1081 (8th Cir. 2018). The Court may also "judicially notice a fact that is not subject to reasonable dispute." *Mehner Fam. Tr. v. U.S. Bank Nat'l Ass'n*, No. 8:16CV367, 2017 WL 823552, at *1 (D. Neb. Mar. 1, 2017).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its fact." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Dismissal under Rule 12(b)(6) is appropriate if it is clear that no relief can be granted under any set of facts that could be proven consistent with the allegations." *O'Neal v. State Farm Fire & Cas. Co.*, 630 F.3d 1075, 1077 (8th Cir. 2011). The complaint must allege facts, which, when taken as true, raise more than a speculative right to relief. *Bell Atlantic Corp.*, 550 U.S. at 544. Where the allegations show on the face of the complaint there is some insuperable bar to relief, dismissal under Rule 12(b)(6) is appropriate. *Benton v. Merrill Lynch & Co.*, 524 F.3d 866, 870 (8th Cir. 2008) (internal citations omitted). The Court is "not bound to accept as true threadbare recitals of the elements of a cause of action, supported by mere conclusory statements or legal conclusions couched as factual allegations." *Schicker*, 442 F. Supp. 3d at 1169 (quotations omitted).

In reviewing *pro se* pleadings, the Court liberally construes them and "holds them 'to less stringent standards than formal pleadings drafted by lawyers.'" *Franklin v. Heartland Fam. Servs.*, No. 8:19CV369, 2020 WL 4589201, at *2 (D. Neb. Jan. 28, 2020) (citations omitted). But, although pleadings are to be liberally construed, "a *pro se* complaint must contain specific facts supporting its conclusions." *Id.* As one Circuit Court has aptly explained, a court need not "supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf." *Whitney v. State of N.M.*, 113 F.3d 1170, 1173–74 (10th Cir. 1997); *see also Wallace v. United States Army*, No. 8:22-CV-367, 2023 WL 4295516, at *3 (D. Neb. June 30, 2023) (explaining courts "will not supply additional facts, nor will [they] construct a legal theory for plaintiff that assumes facts that have not been pleaded") (quoting *Dunn v. White*, 880 F.2d 1188, 1197 (10th Cir. 1989)).

III. **[FED. R. CIV. P. 56](#) – SUMMARY JUDGMENT**

Summary judgment is proper when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *McDonald v. St. Louis Univ.*, 109 F.4th 1068, 1070 (8th Cir. 2024) (citing Fed. R. Civ. P. 56(a)). A fact is "material" if it may "affect the outcome of the suit." *Erickson v. Nationstar Mortg., LLC*, 31 F.4th 1044, 1048 (8th Cir. 2022) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)). "An issue is genuine if the evidence is sufficient to persuade a reasonable jury to return a verdict for the nonmoving party." *Erickson*, 31 F.4th at 1048 (citing *Schilf v. Eli Lilly & Co.*, 687 F.3d 947, 948 (8th Cir. 2012)).

The Court views the facts "in the light most favorable to the nonmoving party only if there is a genuine dispute [as to] those facts." *Johnson v. Westinghouse Air Brake Techs. Corp.*, 104 F.4th 674, 677 (8th Cir. 2024) (citing *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc)). The moving party "bears the initial burden to bring up the fact that the record does not contain a genuine dispute of material fact and to identify that part of the record which bears out his assertion." *Moore v. Martin*, 854 F.3d 1021, 1025 (8th Cir. 2017) (internal quotations omitted). The moving party does not need to negate the opponent's claims or defenses. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324–25, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). In response, the nonmoving party must "set forth affirmative evidence, specific facts, showing that there is a genuine dispute on that issue." *Moore*, 854 F.3d at 1025. "To show a genuine dispute of material fact, a party must provide more than conjecture and speculation." *McConnell v. Anixter, Inc.*, 944 F.3d 985, 988 (8th Cir. 2019). The non-moving party has "an affirmative burden to designate specific facts creating a triable controversy." *Id.*

## ARGUMENT

Mr. Yu's lawsuit against Mr. Weinman should be dismissed for multiple reasons. First, this Court lacks personal jurisdiction over Mr. Weinman pursuant to Fed. R. Civ. P. 12(b)(2). Second, even assuming personal jurisdiction existed, Mr. Yu's claims are still subject to dismissal, with prejudice, pursuant to Fed. R. Civ. P. 12(b)(6) as the Court should not imply a new *Bivens* remedy to Mr. Yu's novel claims. Third, should Mr. Yu's claims overcome these hurdles, Mr. Weinman is entitled to qualified immunity as there has been no constitutional violation of a clearly established right, and, in the alternative, Mr. Weinman is entitled to summary judgment based on qualified immunity because he had no personal involvement in the events alleged in this lawsuit.

I. **THIS COURT LACKS PERSONAL JURISDICTION OVER MR. WEINMAN.**

Mr. Yu has not made allegations that show this Court has personal jurisdiction over Mr. Weinman, a non-resident now haled into Court in Nebraska. Because Mr. Weinman is not a Nebraska resident, personal jurisdiction over him requires compliance with both the forum state's long-arm statute and the Due Process Clause of the United States Constitution. *Eagle Tech. v. Expander Americas, Inc.*, 783 F.3d 1131, 1136 (8th Cir. 2015). Because Nebraska's long-arm statute provides that personal jurisdiction is to be exercised in a manner that is consistent with the United States Constitution, the sole inquiry is whether personal jurisdiction conforms with Constitutional due process. *Wade v. Pottawattamie Cnty.*, 100 F.4th 991, 993 (8th Cir. 2024);

There are two avenues through which personal jurisdiction can be established: general jurisdiction and specific jurisdiction. *See generally Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 413–16 (1984). General jurisdiction requires a plaintiff to establish that the defendant's contact with the forum state is continuous and systematic and not random, fortuitous, or attenuated. *Steinbuch v. Cutler*, 518 F.3d 580, 586 (8th Cir. 2008). In the alternative, specific

jurisdiction involves an analysis of whether the defendant "purposely directed his activities at residents of the forum, and the litigation results from alleged injuries that arise out of or relate to those activities." *Whaley v. Esebag*, 946 F.3d 447, 451 (8th Cir. 2020) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985).

> Specific jurisdiction is different: It covers defendants less intimately connected with a State, but only as to a narrower class of claims. A state court may exercise specific jurisdiction over a nonresident defendant only so long as there exist minimum contacts between the defendant and the forum State. The requisite contacts for this kind of jurisdiction often go by the name purposeful availment. The defendant, we have said, must take some act by which it purposefully avails itself of the privilege of conducting activities within the forum State.

*Fuld v. Palestine Liberation Org.*, 606 U.S. 1, 12–13 (2025) (internal citations and quotation marks omitted). This 'purposeful availment' requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts. *Burger King Corp.*, 471 U.S. at 475. Rather, the contacts must create a substantial connection between the defendant and the forum state. *See id.*

Due process requires that a nonresident defendant have "certain minimum contacts ... such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. State of Wash., Off. of Unemployment Comp. & Placement*, 326 U.S. 310, 316 (1945).

In the Eighth Circuit, courts assess whether personal jurisdiction conforms with due process by considering five factors: "(1) the nature and quality of the contacts with the forum state; (2) the quantity of those contacts; (3) the relation of the cause of action to the contacts; (4) the interest of the forum state in providing a forum for its residents; (5) the convenience of the parties." *Miller v. Nippon Carbon Co.*, 528 F.3d 1087, 1091 (8th Cir. 2008) (internal citations and quotation

marks omitted). "The first three factors are the most important.[2]" *Federated Mut. Ins. Co. v. FedNat Holding Co.*, 928 F.3d 718, 720 (8th Cir. 2019) (citation omitted).

Mr. Yu alleges no facts that could establish either specific or general personal jurisdiction over Mr. Weinman. His "information and belief" type allegations, when tested, fail to show the existence of personal jurisdiction. Here, Mr. Weinman's declaration shows that even the facts, when viewed in a light favorable to Mr. Yu, show a lack of *any* contacts with his forum, let alone sufficient contacts. Nothing in the complaint indicates that Mr. Weinman—who serves as Acting Chief Counsel for the U.S. Mint in Washington, D.C.—has ever lived in Nebraska, owned property here, conducted business here, or had any contact with Nebraska, let alone the "continuous and systematic" contacts required for general jurisdiction. On the facts presented, there is no basis for exercising personal jurisdiction over Mr. Weinman.

With respect to specific jurisdiction, Mr. Yu makes conclusory allegations that Mr. Weiman participated in the seizure, albeit remotely, and has delayed the return of his property. Importantly, Mr. Yu makes no allegation as to where this alleged conduct occurred, nor does he offer any factual support for these allegations. Although Mr. Yu conclusorily asserts that Mr. Weinman communicated with Nebraska officials and directed conduct in Nebraska, he identifies no factual basis for those assertions. Mr. Weinman's declaration specifically denies every alleged communication or act directed toward Nebraska (or anywhere else as it relates to these claims). Once personal jurisdiction has been controverted by affidavit, a plaintiff may not rely solely on

---

[2] Mr. Yu is a citizen of China and a resident of Spain. *See generally* Filing No. 14, ¶ 9. Therefore, the interest Nebraska has in providing a forum for its residents is not applicable to Mr. Yu's litigation. Under this same reasoning, there is no convenience of the parties, for a plaintiff residing in Spain and defendant residing in Washington, D.C., to litigate this case in Nebraska.

unsupported conclusions pleaded on "information and belief;" he must present competent facts sufficient to establish a prima facia basis for jurisdiction.

Mr. Yu has not shown that Mr. Weinman has had any contact, let alone purposeful contact, directed towards this forum. Because the Amended Complaint fails to allege facts establishing specific jurisdiction under the applicable standard, and, when evaluated alongside Mr. Weinman's declaration, likewise fails to establish personal jurisdiction, it does not satisfy the requirements of Fed. R. Civ. P. 12(b)(2). Dismissal is therefore proper.

## II.  **THE COURT SHOULD REFRAIN FROM EXPANDING BIVENS.**

Even assuming Mr. Yu can show that personal jurisdiction exists over Mr. Weinman, his lawsuit still fails as Supreme Court precedent forecloses recognition of Mr. Yu's novel *Bivens* claims. The ability to sue a federal employee individually under the Constitution is "not an automatic entitlement," *Wilkie v. Robbins*, 551 U.S. 537, 550 (2007), and there are only three, decades-old cases in which the Supreme Court has recognized such a remedy. *See Bivens v. Six Uknown Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971); *Davis v. Passman*, 442 U.S. 228 (1979); *Carlson v. Green*, 446 U.S. 14 (1980). "After those decisions, however, the Court changed course." *Hernandez v. Mesa*, 589 U.S. 93, 99 (2020).

"[E]xpanding the *Bivens* remedy is now a 'disfavored' judicial activity," *Ziglar v. Abbasi*, 582 U.S. 120, 135 (2017) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)), as the Court "ha[s] come 'to appreciate more fully the tension between' judicially created causes of action and 'the Constitution's separation of legislative and judicial power," *Egbert v. Boule*, 596 U.S. 482, 491 (2022) (quoting *Hernandez*, 589 U.S. at 100). *See also Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 68 (2001) ("Since *Carlson* we have consistently refused to extend *Bivens* liability to any new context or new category of defendants."); *Cheng v. Grenier*, No. 24-1251, 2024 WL 3886675, at

*1 (8th Cir. Aug. 21, 2024), *cert. denied,* 145 S. Ct. 993, 220 L. Ed. 2d 367 (2024)( "even a 'single reason' to hesitate is sufficient to preclude recognition of a new *Bivens* cause of action" and "expanding *Bivens* is a 'disfavored judicial activity'".)(internal citations omitted), *cert. denied,* 145 S. Ct. 993 (2024).

In *Egbert*, the Supreme Court clarified the two-step inquiry for assessing *Bivens* claims and emphasized that a *Bivens* claim is unavailable "in most every case." 596 U.S. at 492; *see also Wilkie,* 551 U.S. at 550 ("[I]n most instances we have found a *Bivens* remedy unjustified."). "First, [courts must] ask whether the case presents 'a new *Bivens* context'—i.e., is it 'meaningful[ly]' different from the three cases in which the Court has implied a damages action." *Egbert,* 596 U.S. at 492 (quoting *Abbasi,* 582 U.S. at 139). Even small differences suffice for a case to differ in a meaningful way. *Abbasi,* 582 U.S. at 147, 149. And a court cannot extend *Bivens* to a new context based solely on "'parallel circumstances'" with the facts in the three recognized *Bivens* cases; a plaintiff must also "satisf[y] the 'analytic framework' prescribed by the last four decades of intervening case law." *Egbert,* 596 U.S. at 501 (quoting *Abbasi,* 582 U.S. at 139).

Moreover, sufficient similarity requires far more than just invoking the same constitutional provision involved in one of the three cases allowing a *Bivens* remedy. *Farah v. Weyker,* 926 F.3d 492, 499 (8th Cir. 2019) (explaining "a context can be new even if it involves the same constitutional right as an existing case."). Even a case with "significant parallels to one of the [Supreme] Court's [three] previous Bivens cases," or a case presenting just a "modest extension" of one of them, "is still an extension" into a new context. *Abbasi,* 137 S. Ct. at 1864; *see also Ahmed v. Weyker,* 984 F.3d 564, 570 (8th Cir. 2020) ("If the test sounds strict, it is."); *Dotson v. Fed. Bureau of Prisons,* No. 2:21-CV-00147-BSM, 2022 WL 3084150 (E.D. Ark. Aug. 3, 2022), *aff'd,* No. 22-3470, 2023 WL 3704933 (8th Cir. Jan. 3, 2023); *Dotson v. Fed. Bureau of Prisons,*

No. 2:21CV00147-BSM-JTK, 2022 WL 3138706, at *3 (E.D. Ark. June 21, 2022), *report and recommendation adopted,* No. 2:21-CV-00147-BSM, 2022 WL 3084150 (E.D. Ark. Aug. 3, 2022), *aff'd,* No. 22-3470, 2023 WL 3704933 (8th Cir. Jan. 3, 2023), report and recommendation adopted, No. 2:21-CV-00147-BSM, 2022 WL 3084150 (E.D. Ark. Aug. 3, 2022) (applying Egbert to reject Bivens remedy because the facts alleged were distinguishable from one of the recognized cases allowing a Bivens remedy, despite involving the same constitutional provision).

"Second, if a claim arises in a new context, a *Bivens* remedy is unavailable if there are 'special factors' indicating that the Judiciary is at least arguably less equipped than Congress to 'weigh the costs and benefits of allowing a damages action to proceed.'" *Egbert*, 596 U.S. at 492 (quoting *Abbasi*, 582 U.S. at 136); *see also Hernandez*, 589 U.S. at 102 (recognizing "separation-of-powers principles" as "central" to a special factors analysis). As the Court explained in *Egbert*, this inquiry "often resolve[s] to a single question: whether there is any reason to think that Congress might be better equipped to create a damages remedy." 596 U.S. at 492. Put another way, the question is not "whether a court can determine a damages amount" but "[r]ather, . . .whether 'there are sound reasons to think Congress might doubt the efficacy or necessity of a damages remedy' at all." *Id.* at 501 (quoting *Abbasi*, 582 U.S. at 137). And therefore, "[w]hen asked to imply a *Bivens* action, '[the Court's] watchword is caution,'" *id.* at 491 (quoting *Hernandez*, 589 U.S. at 101), "[b]ecause [the Court's] cases have made clear that, in all but the most unusual circumstances, prescribing a cause of action is a job for Congress, not the courts," *id.* at 486.

### a. **Mr. Yu's Claims Present a New Context.**

Plaintiff's constitutional claims present a new context for multiple reasons. First, Mr. Yu's claims are directed against a new category of defendant – an employee of the United States Mint. That, standing alone, "squarely place[s] the case into a new context." *Arias v. Herzon*, 150 F.4th

27, 38 (1st Cir. 2025); *see also id.* at 49 n.9 (emphasizing "that other excessive force claims may, in fact, present a new context" when, "for example, the plaintiff alleged claims against a new category of defendants.")(petition for cert. docketed); *see also Maria Del Socorro Malinowski v. United States of America, et al.*, No. 4:25-CV-00486-LPR, 2026 WL 1948181, at *6 (E.D. Ark. July 6, 2026). *Bivens* involved a claim against officers of the Federal Bureau of Narcotics, *Davis* involved a congressman, *Carlson* involved federal prison officials. Importantly, none of these cases involved an attorney within the U.S. Mint, a bureau of the U.S. Department of Treasury. This difference alone "squarely places" Mr. Yu's claims outside the existing *Bivens* framework.

Second, although Mr. Yu attempts to bring a *Bivens* claim under the Fourth and Fourteenth Amendment, this claim is nothing factually like the three narrow cases recognized by the Supreme Court as implying a remedy. *See Bivens*, 403 U.S. 388, *Davis*, 442 U.S. 228, *Carlson*, 446 U.S. 14[3]. Mr. Yu's claim does not involve a warrantless entry into a home like *Bivens*, a gender based discrimination claim like *Davis*, or a claim for deliberate indifference to a prisoner's medical needs like *Carlson*. Mr. Yu's allegations – that a U.S. Mint attorney remotely influenced or delayed a police investigation or administrative action – have nothing in common with the facts or constitutional injuries in *Bivens*, *Davis*, or *Carlson*. The differences between these three cases and the facts alleged by Mr. Yu are stark and present a "new context". As Mr. Yu's case does not have any remote similarities to *Bivens*, *Davis*, and *Carlson* and challenges conduct far broader than

---

[3] Webster Bivens claimed that federal agents violated the Fourth Amendment when they entered and searched his home from "stem to stern" without a warrant, handcuffed him, and arrested him for drug violations. *Bivens*, 403 U.S. at 389, 397. The other two cases, *Davis* and *Carlson*, involved, respectively, "a claim against a Congressman for firing his female secretary" under the Fifth Amendment; and a claim against prison officials for "failure to treat an inmate's asthma" under the Eighth Amendment. *Abbasi*, 137 S. Ct. at 1860.

alleged in these cases, it qualifies as a new context, especially considering the Court's "understanding of a 'new context' is broad." *Hernandez*, 140 S. Ct. at 743.

### b. **Special Factors Preclude Judicial Creation of a Damages Action.**

Simply stated, this Court "faces only one question: whether there is *any* rational reason (even one) to think that Congress is better suited to 'weigh the costs and benefits of allowing a damages action to proceed.'" *Egbert*, 596 U.S. at 496 (quoting *Abbasi*, 582 U.S. at 136). As *Abbasi* explained, Congress, not the Judiciary, has the "responsibility to determine whether, and the extent to which, monetary and other liabilities should be imposed upon individual officers and employees of the Federal Government." *Abbasi*, 137 S. Ct. at 1856. For this reason, the Supreme Court's "precedents now instruct [that] the Legislature is in the better position to consider if the public interest would be served by imposing a new substantive legal liability." *Id.* at 1857 (internal citations and quotations omitted).

As such, "any rational reason (even one) to think that Congress is better suited" than the Judiciary for this task, *Egbert*, 596 U.S. at 496, qualifies as a "special factor counselling hesitation" against the creation of a new *Bivens* remedy, *Abbasi*, 137 S. Ct. at 1857; *see also Farah v. Weyker*, 926 F.3d 492, 500 (8th Cir. 2019) ("It does not take much to make us pause, because '[i]n most instances, ... [Congress] is in the better position to consider if the public interest would be served by imposing a new substantive legal liability.' Indeed, recognizing the Court's 'caution' in this regard, we have adopted a 'presumption against judicial recognition of direct actions for violations of the Constitution by federal officials.'" (*quoting Abbasi*, 137 S. Ct. at 1858)).

### i. <u>Recognizing a new cause of action against Mr. Weinman would have far-reaching negative implications.</u>

Before recognizing a new *Bivens* action, courts must "evaluate a 'range of policy considerations . . . at least as broad as the range . . . a legislature would consider.'" *Egbert*, 596

U.S. at 491 (quoting *Bivens*, 403 U.S. at 407 (Harlan, J., concurring in judgment)). These considerations "include 'economic and governmental concerns,' 'administrative costs,' and the 'impact on governmental operations systemwide.'" *Id.* (quoting *Abbasi*, 582 U.S. at 134). "Congress is 'far more competent than the Judiciary' to weigh such policy considerations." *Id.* (quoting *Schweiker v. Chilicky*, 487 U.S. 412, 423 (1988)).

First, recognizing a *Bivens* remedy here would risk transforming routine inter-agency communication into potential constitutional tort exposure. Federal agencies frequently consult with state and local authorities regarding a wide range of issues – including fraud investigations, forgery investigations, financial anomalies, and a host of other cases. Allowing a *Bivens* remedy based on "information" and "belief" allegations that a federal attorney remotely "influenced" or "delayed" a local police investigation or subsequent administrative action would exert a chilling effect on such necessary communications. This is precisely the type of negative impacts on systemwide governmental operations that *Abbasi* discussed when indicating that "[t]hese and other considerations may make it less probable that Congress would want the Judiciary to entertain a damages suit in a given case". *Abbasi*, 137 S. Ct. at 1858.

Second, expanding *Bivens* to cover this scenario would require courts to devise standards governing when remote or tangential involvement becomes constitutional liability. As the Eighth Circuit has emphasized, "[i]t does not take much to make us pause," because Congress is in the better position to weigh the costs, benefits, and broader public-policy impacts of new federal causes of action. *Farah v. Weyker*, 926 F.3d 492, 500 (8th Cir. 2019). Courts cannot be expected to craft a workable rule defining when a federal employee, who neither participated in the physical seizure of Mr. Yu's property nor was present at the scene, but is instead alleged to have remotely influenced the investigation or delayed the return of property, may nonetheless be held personally

liable for alleged constitutional violations committed allegedly by independent local law enforcement.

Third, the systemic implications of extending *Bivens* to a federal attorney would be profound. It would invite a wave of claims against federal officials who have been alleged to have remote influence on cases, encouraging plaintiffs to name peripheral federal employees in any number of cases. This would impose significant litigation burdens on federal employees and agencies, a compelling reason against recognizing new *Bivens* actions. And because Mr. Yu's theory is both novel and expansive, it risks hauling federal officers into court to defend against personal liability claims "in the complex sphere of litigation" with negative impacts, including costs and consequences, to the Government. These considerations counsel against a *Bivens* remedy. *Abbasi,* 582 U.S. at 136-37.

<blockquote>ii.    <u>Alternative remedial structures also foreclose recognizing a Bivens remedy in this new context.</u></blockquote>

1.    <u>Treasury Office of Inspector General (OIG).</u>

"If there are alternative remedial structures in place, 'that alone,' like any special factor, is reason enough to 'limit the power of the Judiciary to infer a new *Bivens* cause of action.'" *Egbert,* 596 U.S. at 493 (*quoting Abbasi,* 137 S. Ct. at 1858). This stands as a "convincing reason for the Judicial Branch to refrain" because it indicates that Congress already made a "decision to create the alternative remedial process[.]" *Effex Cap., LLC v. Nat'l Futures Ass'n*, 933 F.3d 882, 892 (7th Cir. 2019) (*quoting Abbasi*, 137 S. Ct. at 1858); *see also Farah v. Weyker*, 926 F.3d 492, 500 (8th Cir. 2019) (explaining that when a remedial structure is "already in place to address constitutional violations, even if it does not go as far as a *Bivens* remedy would," "the Supreme Court has explained, it is less probable that Congress would want the Judiciary to entertain a damages suit." (internal citations and quotations omitted)). The adequacy of an alternative turns upon whether

"Congress or the Executive has created a remedial process that it," as opposed to the Judiciary, "finds sufficient to secure an adequate level of deterrence." *Egbert*, 596 U.S. at 498. The fact that "existing remedies do not provide complete relief" makes no difference. *Id.* (citation omitted); *see Farah*, 926 F.3d at 500; *Grady v. Kinder*, 799 F. App'x 925, 928 (7th Cir. 2020). It also makes no difference whether a "*Bivens* alternative [] afford[s] rights to participation or appeal" for a plaintiff. *Egbert*, 596 U.S. at 497–498. The focus is "'solely [on] deterring the unconstitutional acts of individual officers[.]'" *Id.* (*quoting Correctional Services Corp.*, 534 U.S. at 71).

In *Egbert*, the Court emphasized that an Executive Branch agency's grievance procedures and regulatory obligations to investigate complaints of officer misconduct sufficed to preclude a *Bivens* remedy. *See Egbert*, 596 U.S. at 497–498; *accord Correctional Services Corp.*, 534 U.S. at 74 (finding BOP Administrative Remedy Program counseled against *Bivens* remedy because it provided "means through which allegedly unconstitutional actions and policies can be brought to the attention of the BOP and prevented from recurring."); *see also Bivens v. Blaike*, No. 21-CV-00783-PAB-NYW, 2022 WL 2158984, at *3 (D. Colo. June 15, 2022), *report and recommendation adopted,* No. 21-CV-00783-PAB-NYW, 2022 WL 2716533 (D. Colo. July 13, 2022) (recognizing broad implications of *Egbert* and concluding that an administrative grievance process alone precludes a *Bivens* remedy). According to the Supreme Court, where "Congress or the Executive has created a remedial process that it finds sufficient to secure an adequate level of deterrence, the courts cannot second-guess that calibration by superimposing a *Bivens* remedy." *Egbert*, 596 U.S. at 498. Such is the case here.

Here, the Department of Treasury, Office of Inspector General, Office of Investigations (Treasury OIG) is responsible for investigating criminal activity and employee misconduct associated with the operations of multiple Treasury Bureaus, including the United States Mint. *See*

Office of Inspector General, *Office of Investigations*, https://oig.treasury.gov/office-investigations (last visited July 6, 2026). The authority the Treasury OIG is grounded primarily in the Inspector General Act of 1978, as codified at 5 U.S.C. § 401*, et seq.*, and is supplemented by Treasury-specific statutes and internal directives, including 5 U.S.C. § 412, Treasury Order 114-01[4], Treasury Directive 27-12[5], and Treasury Directive 40-01[6]. Together, these authorities establish an independent oversight office responsible for promoting economy, efficiency, integrity, and accountability throughout the Department of the Treasury.

The Inspector General Act grants the OIG broad authority to conduct audits and investigations, issue subpoenas for non-federal records when authorized by law, access agency records without interference, administer oaths, and recommend administrative, civil, or criminal action when appropriate. *See generally* 5 U.S.C. § 406. Treasury Order 114-01 and Treasury Directive 27-12 implement these statutory authorities within the Department. They provide that Treasury OIG has jurisdiction over virtually all Treasury bureaus and offices, except where Congress has assigned responsibility to another Inspector General (e.g. IRS). Treasury Order 114-01. Within its jurisdiction, Treasury OIG is responsible for conducting independent audits and investigations, reviewing allegations of misconduct, reporting particularly serious or flagrant problems directly to the Secretary and Congress, and ensuring that Treasury programs operate lawfully and efficiently. *Id.*

---

[4] *See* U.S. Department of Treasury, *Treasury Order 114-01 – Treasury Office of Inspector General*, https://home.treasury.gov/about/general-information/orders-and-directives/treasury-order-114-01 (last visited June 30, 2026).

[5] *See* U.S. Department of Treasury, *Treasury Directive 27-12 – Organization and Functions of the Office of Inspector General*, https://home.treasury.gov/about/general-information/orders-and-directives/td27-12 (last visited June 30, 2026).

[6] *See* U.S. Department of Treasury, *Treasury Directive 40-01 – Responsibilities of and to the Inspector General*, https://home.treasury.gov/about/general-information/orders-and-directives/td40-01 (last visited June 30, 2026).

Treasury Directive 40-01 further emphasizes the independence of the OIG and imposes affirmative duties on Treasury personnel. It requires Treasury officers, employees, contractors, grantees, and other responsible persons to fully cooperate with OIG inquiries and recognizes the Inspector General's statutory right of access to all records, databases, facilities, and other information necessary to perform official duties. Treasury employees are required by 31 C.F.R. § 0.210 to respond fully and truthfully to official OIG inquiries.

Finally, any member of the public who believes that a Treasury official, employee, contractor, grantee, or program has engaged in fraud, waste, abuse, mismanagement, or other misconduct may file a complaint with Treasury OIG. Complaints may be submitted electronically through Treasury OIG's Hotline, or by telephone, mail, or fax. The OIG requests that complainants provide as much factual information as possible, including the names of individuals involved, dates, locations, relevant documents, and an explanation of why the conduct is believed to constitute fraud, waste, abuse, or other misconduct. Anonymous complaints are accepted, although providing contact information may assist investigators if additional information becomes necessary. *See* U.S. Department of Treasury, Office of Inspector General, *Report Fraud, Waste, and Abuse*, https://oig.treasury.gov/report-fraud-waste-and-abuse (last visited June 30, 2026).

The investigation and grievance procedures described above, are, as *Egbert* underscores, reason alone to hesitate before recognizing a *Bivens* remedy. That remains true irrespective of whether Mr. Yu ever files a grievance, or any investigation is conducted related to his allegations. Indeed, *Egbert* instructs that even an allegedly "inadequate" grievance process can "independent[ly]" foreclose *Bivens* actions. *Egbert*, 596 U.S. at 497–98. That is because the relevant "focus is whether the Government has put in place safeguards to prevent constitutional violations from recurring." *Egbert*, 596 U.S. at 498. (quotations omitted). Here, as in *Egbert*, such

safeguards plainly exist. *See also Hudson v. Michigan*, 547 U.S. 586, 599 (2006) ("[I]t is not credible to assert that internal discipline, which can limit successful careers, will not have a deterrent effect."). Other courts agree. *See, e.g., Logsdon v. United States Marshal Serv.*, 91 F.4th 1352, 1359 (10th Cir. 2024) (finding "the internal USMS grievance procedure and the Department of Justice's Office of the Inspector General (OIG) investigation procedure are adequate alternative remedies."); *Cain v. Rinehart*, No. 22-1893, 2023 WL 6439438, at *4 (6th Cir. July 25, 2023) (explaining "[a]lthough such alternative remedies do not allow an outside individual to participate or seek judicial review of the agency determination, *Egbert* held that similar provisions applicable to the U.S. Border Patrol precluded a *Bivens* remedy."); *Lewis v. Westfield*, 640 F. Supp. 3d 249, 254 (E.D.N.Y. 2022), *aff'd sub nom. Lewis v. Bartosh*, No. 22-3060-PR, 2023 WL 8613873 (2d Cir. Dec. 13, 2023) ("Comparable remedial schemes counsel hesitation here"); *McIntyre v. United States Marshal Serv.*, No. CV181268KMMAH, 2023 WL 2447424, at *7 (D.N.J. Mar. 10, 2023) ("Remedial schemes of this sort, whether or not they wholly satisfy a particular claimant, 'foreclose a *Bivens* action,' because, as *Egbert* made clear, '[s]o long as Congress or the Executive has created a remedial process that it finds sufficient to secure an adequate level of deterrence, the courts cannot second-guess that calibration by superimposing a *Bivens* remedy.'" (quoting Egbert)); *Clutts v. Lester*, 676 F. Supp. 3d 698 (N.D. Iowa 2023) (indicating "the U.S. Marshals Service existing internal grievance procedure provides an available alternative remedial structure"). Indeed, these available procedures foreclose recognizing a *Bivens* remedy in this case.

    2.    <u>The Federal Tort Claims Act is yet another alternative remedial avenue.</u>

In addition to the above remedial avenues, the Federal Tort Claims Act (FTCA) provides Mr. Yu an opportunity to seek monetary damages from the United States of America. This statute serves as "the exclusive remedy for most claims against Government employees arising out of their official conduct," *Hui v. Castaneda*, 559 U. S. 799, 806 (2010).

Several courts have cited the FTCA as an alternative remedial structure weighing against expanding a Bivens remedy. *See, e.g.*, *Oliva v. Nivar*, 973 F.3d 438, 444 (5th Cir. 2020) (acknowledging the FTCA as an alternative remedial structure); *McKinney v. United States*, No. 17-CV-4156, 2021 WL 3856132, at \*7 (D. Minn. Aug. 27, 2021) (declaring "the FTCA provides a potential, alternative remedy for Plaintiffs and weighs against expansion of a *Bivens* remedy"); *Robinson v. Heinze*, 655 F. Supp. 3d 1276, 1281 (N.D. Ga. 2023), *aff'd sub nom. Robinson v. Sauls*, 102 F.4th 1337 (11th Cir. 2024) ("[T]he Federal Tort Claims Act ('FTCA') also provides an alternative remedial structure that counsels against the *Bivens* claim in this case."); *McIntyre*, 2023 WL 2447424, at \*8; *Edwards v. Gizzi*, No. 20-CV-7371 (KMK), 2022 WL 309393, at \*8 (S.D.N.Y. Feb. 2, 2022), *aff'd*, 107 F.4th 81 (2d Cir. 2024); *McNeil v. Duda*, No. 3:22-CV-50096, 2023 WL 2587884, at \*4 (N.D. Ill. Mar. 21, 2023); *Wardlow v. Tomar*, No. 2:24-CV-158-DPM-ERE, 2025 WL 2621547, at \*6 (E.D. Ark. Aug. 4, 2025), *report and recommendation adopted,* No. 2:24-CV-158-DPM, 2025 WL 2617687 (E.D. Ark. Sept. 10, 2025). So too here. Because the FTCA serves as a *potential* alternative remedial structure, Plaintiff's proposed *Bivens* claim should be foreclosed.

In sum, the Supreme Court would likely not recognize such a claim in this case based on *Egbert* and the Court's other recent decisions previously mentioned. Mr. Yu's purported claims would trigger a new context from *Bivens* for the reasons stated above. And, multiple aforementioned factors would counsel hesitation in recognizing a *Bivens* remedy in this new context. Together, these reasons should foreclose this Court from recognizing a *Bivens* remedy in this case.

III.     **MR. WEINMAN IS ENTITLED TO QUALIFIED IMMUNITY.**

Courts have long recognized that individual-capacity lawsuits against federal officials give rise to "substantial social costs," particularly "the risk that fear of personal monetary liability and harassing litigation will unduly inhibit officials in the discharge of their duties." *Anderson v. Creighton*, 483 U.S. 635, 638 (1987). The doctrine of qualified immunity mitigates these costs by "shield[ing] officials from civil liability so long as their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (per curiam) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)).

The qualified immunity defense in this context is "an immunity from suit rather than a mere defense to liability." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). Accordingly, the Supreme Court has repeatedly stressed that qualified immunity issues should be resolved at the earliest stage of litigation. *See, e.g., Hunter v. Bryant*, 502 U.S. 224, 226 (1991).

To overcome a qualified immunity defense and avoid dismissal of their claims, a plaintiff must "plead[] facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).[7] Courts may address the prongs in either order, and a plaintiff's failure to plead facts demonstrating either prong of the qualified immunity test is fatal to their claims. *See Pearson*, 555 U.S. at 236. A court determines as a matter of law if a "given set of facts entitles the official to summary judgment on qualified immunity grounds[]." *Wimbley v. Cashion*, 588 F.3d 959 (8th Cir. 2009).

    a. <u>**Mr. Yu has not plausibly alleged that Mr. Weinman personally violated any right.**</u>

---

[7] The qualified immunity analysis is identical under either a *Bivens* cause of action or a suit under § 1983. *Wilson v. Layne*, 526 U.S. 603, 609 (1999).

In *Ashcroft v. Iqbal*, the Supreme Court explained:

> Two working principles underlie our decision in *Twombly.* First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. [Fed. Rule Civ. Proc.] 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not show[n]—that the pleader is entitled to relief.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009) (internal citations and quotation marks omitted) (cleaned up). Plaintiff has provided neither specificity nor non-conclusory factual support as to Mr. Weinman's actions. "[A]n allegation of parallel conduct and a bare assertion of conspiracy will not suffice." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007); *See also Gooden v. Howard Cty., Md.*, 954 F.2d 960, 969-70 (4th Cir. 1992) ("To avoid evisceration of the purposes of qualified immunity, courts have thus required that plaintiffs alleging unlawful intent in conspiracy claims under … § 1983 plead specific facts in a nonconclusory fashion to survive a motion to dismiss.").

These allegations in the Amended Complaint against Mr. Weinman can only be characterized as sweeping legal conclusions and are not made with sufficient specificity. The assertions rest on broad statements of misconduct and expansive characterizations of intent, and they simply project conclusions attributed to Mr. Weinman without factual support.

The only allegations against Mr. Weinman made with any degree of specificity – that he spoke with BPD Chief Clary and instructed BPD to fabricate suspicion and to proceed as a

prosecution of usage of "slug" – completely lack any non-conclusory factual support. These "information and belief" allegations are simply bare assertions, not well-pleaded facts.

b. **<u>Mr. Yu has not shown a violation of any clearly established right.</u>**

For the same reasons, Mr. Yu has not pleaded facts sufficient to establish a violation of clearly established law and therefore Mr. Weinman is entitled to qualified immunity on this additional basis. "'Clearly established' means that, at the time of the officer's conduct, the law was 'sufficiently clear' that every 'reasonable official would understand that what he is doing' is unlawful." *D.C. v. Wesby*, 138 S. Ct. 577, 589 (2018). Stated another way, "existing law must have placed the constitutionality of the officer's conduct 'beyond debate.'" *Id.*

In determining whether the right was "clearly established", the Eighth Circuit has indicated that this "is a fact-intensive inquiry and 'must be undertaken in light of the specific context of the case, not as a broad general proposition.'" *Littrell v. Franklin*, 388 F.3d 578, 582 (8th Cir. 2004). To be clearly established, the "contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Id.* The Supreme Court has underscored the need for such specificity in the context of Fourth Amendment cases, stating "[i]t is sometimes difficult for an officer to determine how the relevant legal doctrine, here excessive force, will apply to the factual situation the officer confronts." *Mullenix v. Luna*, 577 U.S. 7, 12 (2015).

Mr. Weinman is not aware of any precedent that clearly establishes that a federal agency attorney who allegedly gives remote advice to independent local officers, does not possess or control the seized property, and had no authority to order its return is personally liable under the Fourth Amendment for the local officers' seizure or the state court's delay. Existing law does not require the United States Mint to take custody of seized coins where the Mint (or its employees)

partner or consult with nonfederal law enforcement agencies to investigate counterfeiting. Had the Mint taken custody of the coins, it would plausibly be more convenient for Mr. Yu to request their return under CAFRA, but nowhere has the law imposed this requirement. Similarly, it is not a violation of clearly established law for Mr. Weinman to delay the return of the coins because they are in the custody of the Bellevue Police Department, and, more importantly, existing law imposes no such duty on Mr. Weinman in this context.

Mr. Yu does not plausibly allege that Mr. Weinman performed any of these acts for the reasons discussed above. Accordingly, Mr. Weinman is entitled to qualified immunity on this additional ground under Fed. R. Civ. P. 12(b)(6) and Plaintiff's lawsuit should be dismissed with prejudice.

IV. **ALTERNATIVELY, MR. WEINMAN IS ENTITLED TO QUALIFIED IMMUNITY UNDER FED. R. CIV. P. 56.**

Alternatively, Mr. Weinman is entitled to summary judgment on qualified immunity grounds because he had no personal involvement in the events alleged in this lawsuit and therefore did not violate Mr. Yu's constitutional rights. Under oath, he denied involvement in the events alleged in this lawsuit. (*See* Filing No. 41, Declaration of Greg Weinman, ¶¶ 13-18). Mr. Yu's allegations concerning Mr. Weinman's involvement based on "information and belief" are insufficient to survive a motion for summary judgment. At the summary judgment level, a plaintiff "may not rely on allegations or denials, but must demonstrate the existence of specific facts . . . supported by 'sufficient probative evidence [that] would permit a finding in [his] favor on more than mere speculation, conjecture, or fantasy.'" *Donathan v. Oakley Grain, Inc.*, 861 F.3d 735, 739 (8th Cir. 2017) (citing *Mann v. Yarnell*, 497 F.3d 822, 825 (8th Cir. 2007)). Mr. Yu is unable to demonstrate the existence of any specific facts or present a genuine issue for trial because there is no evidence that Mr. Weinman was ever involved in these events.

Mr. Yu cannot produce any evidence beyond bare allegations that Mr. Weinman participated directly or indirectly in these events. Mr. Weinman's sworn declaration states he was not involved, and Mr. Yu simply has no evidence to the contrary. Mr. Weinman is therefore entitled to qualified immunity because he has not violated Plaintiff's constitutional rights, and the Court should find that he is entitled to qualified immunity.

Because the absence of a constitutional violation ends the qualified immunity analysis, the Court need not reach whether any right was clearly established. *See Kulkay v. Roy*, 847 F.3d 637, 642 (8th Cir. 2017) ("Because an official is entitled to qualified immunity unless both prongs are satisfied, our analysis will end if either of the two is not met.").

## CONCLUSION

For the reasons set forth above, Mr. Yu's claims against Defendant Greg Weinman should be dismissed because the Court lacks personal jurisdiction over Mr. Weinman, because the Court should not extend a judicially implied *Bivens* remedy to this new context, and because Mr. Weinman is entitled to qualified immunity under Fed. R. Civ. P. 12(b)(6) or, alternatively, Fed. R. Civ. P. 56.

Respectfully submitted,

Greg Weinman, Defendant.

LESLEY A. WOODS
UNITED STATES ATTORNEY
DISTRICT OF NEBRASKA

By:    s/ John M. Ward
        John M. Ward, #26636
        Assistant U.S. Attorney
        1620 Dodge Street, Suite 1400
        Omaha, NE  68102-1506
        Tel:  (402) 661-3700
        Fax:  (402) 661-3081
        E-mail:  john.ward2@usdoj.gov

By:    s/ Timothy R. Hook
Timothy R. Hook, #24529
Assistant U.S. Attorney
1620 Dodge Street, Suite 1400
Omaha, NE 68102-1506
Tel: (402) 661-3700
Fax: (402) 661-3081
E-mail: timothy.hook@usdoj.gov

## CERTIFICATE OF COMPLIANCE

Pursuant to NECivR 7.1(d)(1)(D), I certify this brief complies with the requirements of NECivR 7.1(d)(1). Relying on the word-count function of Microsoft Word for Office 365 MSO, this document contains 9,776 words. The word-count function was applied to all text, including the caption, headings, footnotes, and quotations.

s/ John M. Ward
Assistant U.S. Attorney