IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| ZEHAO YU,<br><br>Plaintiff,<br><br>v.<br><br>GREG WEINMAN and MICHAEL HOLM, each in his individual capacity,<br><br>Defendants. | **8:25CV426**<br><br>**MEMORANDUM AND ORDER** |

This matter is before the Court on defendant Greg Weinman's ("Weinman") Motion to Dismiss or, in the Alternative, Motion for Summary Judgment (Filing No. 39). Weinman asks the Court to dismiss him from the case for lack of personal jurisdiction. *See* Fed. R. Civ. P. 12(b)(2). Failing that, Weinman seeks dismissal of *pro se* plaintiff Zehao Yu's ("Yu") claim under *Bivens*[1] for failure to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6). Alternatively, Weinman moves for summary judgment pursuant to Federal Rule of Civil Procedure 56 with an attached declaration (Filing No. 41). Finding no need to convert Weinman's motion into one for summary judgment, the Court grants Weinman's motion to dismiss in part and denies it in part for the reasons stated below.

## I. BACKGROUND

### A. Facts

Drawing from Yu's Amended Complaint (Filing No. 14), the Court summarizes the facts of the case as follows. Yu is a citizen of China and legal resident of the United States who came to Nebraska to pursue higher education. Before October 2024, Yu resided in Bellevue, Nebraska, but now lives in Spain. Yu's father lives in China, where he works at

[1] *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971).

a metal recycling factory that processes waste from the United States. Through this process, the factory recovers United States coins that have been discarded. Yu's father would collect these coins and send them to Yu, who would redeem them at a Coinstar Machine inside a Walmart Supermarket in Bellevue, Nebraska ("Walmart").

On October 7, 2024, Yu was feeding coins into the Coinstar machine to redeem them for cash, when a Walmart employee called the Bellevue Police Department ("BPD"). When police arrived at the Walmart, they issued Yu a "Ban and Bar Letter" (restraining order) dated October 7, 2024. The order barred Yu from returning to the Bellevue Walmart for a period of one year. The responding officer also seized $1,600 from Yu during the encounter.

On October 11, 2024, defendant Michael Holm ("Holm"), a detective with BPD, petitioned the state court in Bellevue for a search warrant for Yu's apartment. To obtain the warrant, Holm alleged that Yu had been "dropping slugs" in violation of Neb. Rev. Stat. § 28-607.[2] The search warrant was executed on October 18, 2024, and Yu was arrested. Police recovered around $6,000 in banknotes and $44,000 in coins from Yu's apartment and $59,439 in unspecified currency from a safe deposit box at a local bank.

On or about October 30, 2024, Yu moved the state court to quash the search warrant, demanding the return of his property and asking the court to vacate the restraining order barring him from the Bellevue Walmart. According to Yu, the state court has not set a hearing on Yu's motion. At the time that Yu filed his original complaint on June 27, 2025, BPD had not returned any of the seized property and no criminal charges had been brought against him.

[2]The statute defines "slugs" as "an object which by size, shape, or any other quality is capable of being inserted, deposited, or otherwise used in a coin machine as an improper but effective substitute for a genuine coin, bill, or token." Neb. Rev. Stat. § 28-607(2)(a).

**B. Procedural History**

Yu filed his original complaint on June 27, 2025, alleging five causes of action against six different defendants (Filing No. 1). On October 20, 2025, the Court conducted a preliminary review of Yu's complaint pursuant to 28 U.S.C. §§ 1915(e) and 1915A and gave Yu leave to file an amended complaint by November 19, 2025 (Filing No. 11). Yu amended his complaint on November 19, 2025 (Filing No. 14).

The Court conducted a supplemental review on March 31, 2026, dismissing all but two claims against two defendants (Filing No. 19). Yu's remaining claims include a 42 U.S.C. § 1983 claim against Holm for alleged violations of the Fourth and Fourteenth Amendments of the United States Constitution and a *Bivens* claim against Weinman for alleged violations of the Fourth Amendment.[3] Weinman is the Deputy Chief Counsel and current Acting Chief Counsel for the United States Mint ("Mint") in Washington D.C.

Throughout his complaint, Yu makes a number of allegations "upon information and belief," which Weinman disputes. Those include:

- That Weinman devises the Mint's policies and techniques to fabricate false probable cause and avoid the testing of seized coins.
- That Weinman and the Mint worked "in concert" with the BPD to launch false arrests and false seizures of coins from China.

[3]The Court recognizes that some of the language in the March 31, 2026, order could be construed as allowing a Fourteenth Amendment claim against Weinman to proceed. Indeed, Yu argues in his response brief that he is pursuing such a claim (Filing No. 48). However, the only potential claim against Weinman is a Fourth Amendment claim under *Bivens*, as the Fourteenth Amendment does not give rise to claims against federal officials, only state actors. *See Clutts v. Lester*, 676 F. Supp. 3d 698, 707 (N.D. Iowa 2023); *see also* U.S. CONST. amend. XIV ("No *State* shall . . . deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." (emphasis added)).

- That Weinman has directed all agencies working with the Mint to (1) ignore Civil Asset Forfeiture Reform Act ("CAFRA"), 18 U.S.C. § 983, rules, (2) delay coin testing, and (3) invent new testing methods.
- That within fourteen days of the October 7, 2024, incident, Holm, along with BPD Chief Ken Clary, called Weinman and the Mint to discuss who would proceed with the prosecution of Yu.
- That Weinman instructed BPD to fabricate the suspicion of "use of slugs" and obtain a warrant in state court. By using BPD as a proxy, Weinman could bypass the rules and procedures of CAFRA.

On July 24, 2026, Weinman filed the instant motion, seeking dismissal of the claim against him (Filing No. 39). Yu opposes dismissal (Filing No. 48).

## II. DISCUSSION

### A. Allegations "Upon Information and Belief"

As a preliminary matter, Weinman takes issue with Yu's allegations pleaded "upon information and belief." Weinman argues that such allegations are purely speculative and that Yu "lacks any factual basis for those beliefs." In Weinman's view, Yu's allegations "upon information and belief" that Weinman acted in concert with BPD and issued nationwide directives, operational blacklists, and enforcement strategies that encompassed Nebraska, fall short of meeting federal pleading standards and should not be considered by the Court.

Weinman's concerns are not without some merit, but the Eighth Circuit has recognized that "allegations pled on information and belief are not categorically insufficient to state a claim for relief where the proof supporting the allegation is within the sole possession and control of the defendant or where the belief is based on sufficient factual material that makes the inference of culpability plausible." *Ahern Rentals, Inc. v. EquipmentShare.com, Inc.*, 59 F.4th 948, 954 (8th Cir. 2023).

**B. Personal Jurisdiction**

**1. Standard of Review**

Before ruling on the merits, the Court must first address Weinman's argument that Yu has failed to establish personal jurisdiction over him in Nebraska. *See Sinochem Int. Co. Ltd. v. Malaysia Int. Shipping Corp.*, 549 U.S. 422, 430-31 (2007); Fed. R. Civ. P. 12(b)(2). When a defendant challenges personal jurisdiction, "the plaintiff bears the burden to show that jurisdiction exists." *Fastpath, Inc. v. Arbela Tech. Corp.*, 760 F.3d 816, 820 (8th Cir. 2014) (collecting cases).

In evaluating whether Yu has met his burden, the Court holds his complaint, "however inartfully pleaded, . . . to less stringent standards than formal pleadings drafted by lawyers." *Jackson v. Nixon*, 747 F.3d 537, 541 (8th Cir. 2014) (alternations in original) (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)); *Topchian v. JPMorgan Chase Bank, N.A.*, 760 F.3d 843, 849 (8th Cir. 2014) ("A pro se complaint must be liberally construed, . . . and pro se litigants are held to a lesser pleading standard than other parties." (internal citation omitted)). Still, like all plaintiffs, Yu must set forth sufficient factual allegations to "nudge[] [his] claims across the line from conceivable to plausible." *Bell At. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004) ("Though pro se complaints are to be construed liberally, . . . they still must allege sufficient facts to support the claims advanced." (internal citation omitted)).

"To survive a motion to dismiss" on personal-jurisdiction grounds, "a plaintiff must make a prima facie showing that personal jurisdiction exists, which is accomplished by pleading sufficient facts 'to support a reasonable inference that the defendant[ ] can be subjected to jurisdiction within the state.'" *K-V Pharm. Co. v. J. Uriach & CIA, S.A.*, 648 F.3d 588, 591-92 (8th Cir. 2011) (alterations in original) (quoting *Dever v. Hentzen Coatings, Inc.*, 380 F.3d 1070, 1072 (8th Cir. 2004)).

In determining whether a plaintiff has made the requisite prima facie showing, the Court may, when necessary, "look beyond the pleadings to determine whether personal

jurisdiction exists, including reviewing affidavits and other exhibits." *Pederson v. Frost*, 951 F.3d 977, 979 (8th Cir. 2020). However, "[a]t the motion stage, the action should not be dismissed for lack of jurisdiction if the evidence, viewed in the light most favorable to [the nonmoving party], is sufficient to support a conclusion that the exercise of personal jurisdiction over [the moving party] is proper." *Creative Calling Sols., Inc. v. LF Beauty Ltd.*, 799 F.3d 975, 979 (8th Cir. 2015). "The evidentiary standard required at the prima facie stage is minimal." *Johnson v. Arden*, 614 F.3d 785, 794 (8th Cir. 2010) (quoting *Willnerd v. First Nat'l Neb., Inc.*, 558 F.3d 770, 778 (8th Cir. 2009)).

This Court's personal jurisdiction over Weinman extends only to the extent permitted by Nebraska's long-arm statute and the constitutional requirements of Due Process. *See Stanton v. St. Jude Medical, Inc.*, 340 F.3d 690, 693 (8th Cir. 2003). Nebraska's long-arm statute, Neb. Rev. Stat. § 25-536, has been construed to "confer jurisdiction to the fullest extent permitted by the United States Constitution." *Id.*; *see also Nimmer v. Giga Entm't Media, Inc.*, 905 N.W.2d 523, 532 (Neb. 2018) ("Nebraska's long-arm statute . . . extends Nebraska's jurisdiction over nonresidents having any contact with or maintaining any relation to this state as far as the U.S. Constitution permits.").

Under the Due Process Clause, "[j]urisdiction is appropriate only where a defendant has sufficient 'minimum contacts' with the forum state that are more than random, fortuitous, or attenuated, such that summoning the defendant would not offend traditional notions of fair play and substantial justice." *Pecoraro v. Sky Ranch for Boys, Inc.*, 340 F.3d 558, 561 (8th Cir. 2003); *accord World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291-92 (1980). "The central question is whether a defendant has purposely availed [himself] of the privilege of conducting activities in the forum state and should, therefore, reasonably anticipate being held into court there." *Pecoraro*, 340 F.3d at 562 (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) and *World-Wide Volkswagen*, 444 U.S. at 297).

The Supreme Court has recognized two types of personal jurisdiction— "general" and "specific" jurisdiction. *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 358 (2021); *see also Johnson*, 614 F.3d at 794 ("The minimum contacts necessary for due process may be the basis for either 'general' or 'specific' jurisdiction."). General jurisdiction exists "when a defendant is 'essentially at home' in the State." *Ford Motor Co.*, 592 U.S. at 358 (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). Specific jurisdiction exists if a nonresident defendant "has certain contacts with the forum State and the cause of action arises out of those contacts." *Creative Calling*, 799 F.3d at 980; *accord Bristol-Myers Squibb Co. v. Super. Ct. of Cal., S.F. Cnty.*, 582 U.S. 255, 262 (2017).

When evaluating whether the constitutional requirements for personal jurisdiction are met, the Eighth Circuit has identified five factors to consider: "(1) the nature and quality of the defendant's contacts with the forum state; (2) the quantity of contacts; (3) the relationship between the cause of action and the contact; (4) the forum state's interest in providing a forum for its residents; and (5) the convenience of the parties." *Pecoraro*, 340 F.3d at 562. "The first three factors are closely related and are of primary importance, while the last two factors are secondary." *Id.*

### 2. Sufficiency of Weinman's Contacts

Yu does not argue, and could not seriously argue, that "general" jurisdiction is adequately pleaded in this case. Nothing in the pleadings suggests that Weinman is a resident of Nebraska or otherwise has such "continuous and systematic" contacts with Nebraska to render him "essentially at home." *See Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014).

Turning to "specific" jurisdiction, Yu contends that Weinman's conduct in communicating with BPD and instructing them to fabricate a "use of slugs" claim was intentional and expressly aimed at Nebraska. The Supreme Court and Eighth Circuit both have recognized an additional consideration when a defendant aims their intentional

conduct at the forum state. *See generally Calder v. Jones*, 465 U.S. 783, 789-91 (1984); *Steinbuch v. Cutler*, 518 F.3d 580, 586 (8th Cir. 2008). Under this standard, a defendant must "reasonably anticipate being hauled into court" when their intentional actions were expressly aimed at the forum state and they knew that the "brunt of th[e] injury would be felt . . . in the [forum] [s]tate." *Calder*, 465 U.S. at 789-90.

Weinman argues Yu has not sufficiently pleaded *any* contacts with Nebraska that would confer personal jurisdiction. He contends Yu's allegations "upon information and belief" should not be considered in analyzing personal jurisdiction. Weinman further argues that his declaration, submitted in connection with his motion, is sufficient to refute Yu's allegations.

Weinman raises some salient questions, but the Court need not answer them at this state. Absent an evidentiary hearing (which neither party has requested here), the Court will resolve all factual disputes in Yu's favor. *See Fastpath, Inc.*, 760 F.3d at 820 ("Where no hearing is held on the motion, we must view the evidence in a light most favorable to the plaintiff and resolve factual conflicts in the plaintiff's favor."). Additionally, under the *Ahern* standard discussed above, the Court will not categorically rule out Yu's allegations for the purposes of this motion. Consequently, the Court accepts as true for the purposes of Yu's prima facie showing of personal jurisdiction his allegations regarding Weinman's contact with Nebraska.

Yu's allegations, while unlikely to meet a preponderance of the evidence standard, are sufficient at this stage to make the necessary "minimal showing" for a prima facie case. *See Johnson*, 614 F.3d at 794. Based on his *pro se* status and the low burden at this stage of the litigation, Yu's allegations that Weinman took intentional action aimed at Nebraska, taken in the light most favorable to Yu, are sufficient to "nudge" his claims that Weinman should be subject to personal jurisdiction "across the line from conceivable to plausible." *See Twombly*, 550 U.S. at 570.

### C. No *Bivens* Claim

#### 1. Standard of Review

Weinman also moves to dismiss Yu's proposed *Bivens* claim for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Under Federal Rule of Civil Procedure 8(a)(2), a complaint requires "a short and plain statement of the claim showing that the pleader is entitled to relief." While "'[d]etailed factual allegations' are not required," in order "to survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).

When reviewing a complaint under the plausibility standard, the Court must "assume the truth of all factual allegations in the complaint and make all reasonable inferences in favor of the nonmoving party" but is "not bound to accept the truth of legal conclusions couched as factual allegations." *Delker v. MasterCard Int'l, Inc.*, 21 F.4th 1019, 1024 (8th Cir. 2022). To state an adequate claim for relief, "the complaint 'must contain either direct or inferential allegations . . . to sustain recovery under some *viable* legal theory.'" *Id.* (emphasis added) (quoting *Twombly*, 550 U.S. at 555); *see also Benton v. Merrill Lynch & Co., Inc.*, 524 F.3d 866, 870 (8th Cir. 2008) ("Where the allegations show on the face of the complaint there is some insuperable bar to relief, dismissal under Rule 12(b)(6) is appropriate.").

#### 2. Expansion of *Bivens*

Yu's Fourth Amendment claim against Weinman relies on the judicially created *Bivens* remedy first established by the Supreme Court in 1971. *See Bivens*, 403 U.S. at 397. Since the original *Bivens* decision, the Supreme Court has only implied the remedy two other times. *See Davis v. Passman*, 442 U.S. 228, 248 (1979); *Carlson v. Green*, 446 U.S. 14, 25 (1980). But since *Carlson*, the Supreme Court has invariably declined, on many occasions, to extend *Bivens* beyond the specific circumstances of the original three cases. *See Goldey v. Fields*, 606 U.S. 942, 945 (2025); *Egbert v. Boule*, 596 U.S. 482, 501-02 (2022); *Hernandez v. Mesa*, 589 U.S. 93, 114 (2020); *Ziglar v. Abbasi*, 582 U.S.

120, 155 (2017); *Minneci v. Pollard*, 565 U.S. 118, 126, 131 (2012); *Wilkie v. Robbins*, 551 U.S. 537, 541, 555 (2007); *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 63, 74 (2001); *FDIC v. Meyer*, 510 U.S. 471, 473, 486 (1994); *Schweiker v. Chilicky*, 487 U.S. 412, 420-21 (1988); *United States v. Stanley*, 483 U.S. 669, 678, 685-86 (1987); *Bush v. Lucas*, 462 U.S. 367, 374, 390 (1983); *Chappell v. Wallace*, 462 U.S. 296, 298, 305 (1983).

Recognizing a cause of action under *Bivens* has become a "disfavored judicial activity." *Ziglar*, 582 U.S. at 121. To determine whether a *Bivens* action should be recognized, the Supreme Court has created an exacting two-step test. *See Egbert*, 596 U.S. at 492. The Court must first "ask whether the case presents 'a new *Bivens* context'—*i.e.*, is it 'meaningful[ly]' different from the three cases in which the Court has implied a damages action." *Id.* (alteration in original) (quoting *Ziglar*, 582 U.S. at 122). Even a "modest extension" beyond the original three contexts "is still an extension." *Ziglar*, 582 U.S. at 147-49.

"Second, if a claim arises in a new context, a *Bivens* remedy is unavailable if there are 'special factors' indicating that the Judiciary is at least arguably less equipped than Congress to 'weigh the costs and benefits of allowing a damages action to proceed.'" *Egbert*, 596 U.S. at 492 (quoting *Ziglar*, 582 U.S. at 136). The two-step inquiry is meant to resolve a single question: "whether there is *any* reason to think that Congress might be better equipped to create a damages remedy." *Id.* (emphasis added).

"If there is even a single 'reason to pause before applying *Bivens* in a new context,' a court may not recognize a *Bivens* remedy." *Id.* (quoting *Hernandez*, 589 U.S. at 102). As the Eighth Circuit has stated, "[i]f the test sounds strict, it is." *Ahmed v. Weyker*, 984 F.3d 564, 570 (8th Cir. 2020).

As Weinman rightly contends, Yu is unable to point to any cases recognizing a *Bivens* claim against an attorney at the Mint purportedly directing local police to conduct search and seizures from afar. In *Bivens*, the plaintiff brought a Fourth Amendment claim

against agents from the Federal Bureau of Narcotics who allegedly performed an unlawful search and seizure. *See Bivens*, 403 U.S. at 389. In *Davis*, the plaintiff, a former administrative assistant, brought a Fifth Amendment claim against her former boss, a United States Congressman. *See Davis*, 442 U.S. at 230-31. Lastly, in *Carlson*, the mother of a deceased prisoner brought an Eighth Amendment claim against federal prison officials due to their alleged role in her son's death. *See Carlson*, 446 U.S. at 16-17.

Yu contends his case is sufficiently similar to *Bivens*, that it does not present a new context, and that Weinman's arguments that it does are a "hyper-technical distortion." Yu relies on the fact that both in *Bivens* and here, there exists a Fourth Amendment claim resulting from an unlawful search and seizure. Yet "treating all search-and-seizure cases the same would contradict the Supreme Court's direction that a context can be new even if it involves the same constitutional right as an existing case." *Farah v. Weyker*, 926 F.3d 492, 499 (8th Cir. 2019) (citing *Ziglar*, 582 U.S. at 139).

Despite Yu's arguments, there are substantial differences here that indubitably create a new *Bivens* context. Unlike *Bivens*, Weinman had no direct role in the alleged unlawful search of Yu's apartment and subsequent seizure of his money. Instead, Yu only alleges that he in some way directed these activities from Washington, D.C., using BPD as a proxy. No prior case law supports extending *Bivens* to Weinman, who would constitute a "new category of defendant[]." *See Malesko*, 534 U.S. at 68.

Special factors also counsel hesitation in extending *Bivens* here. Yu frames Weinman's role in the challenged actions as providing the "legal imprimatur for the operational framework that resulted in the seizure." His argument is premised on the idea that Weinman is a "supervisory official." Despite Yu's assertion to the contrary, the Supreme Court noted in *Ziglar* that "a *Bivens* action is not 'a proper vehicle for altering an entity's policy,'" and "*Bivens* is not designed to hold officers responsible for acts of their subordinates." *Ziglar*, 582 U.S. at 140-41 (quoting *Malesko*, 534 U.S. at 74); *cf. Iqbal*, 556

U.S. at 676 ("Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*.").

The Court is wary of delving into policymaking at the Mint through a *Bivens* action, and has no basis to open its officials to future litigation for actions by independent actors with which the Mint has only a tangential relationship. "These consequences counsel against allowing a *Bivens* action against the Executive Officials, for the burden and demand of litigation might well prevent them . . . from devoting the time and effort required for the proper discharge of their duties." *Ziglar*, 582 U.S. at 141.

For these reasons, the Court finds that Yu's Fourth Amendment claim against Weinman presents a new *Bivens* context, that extending the *Bivens* remedy is unwarranted, and that dismissal under Rule 12(b)(6) is therefore proper.[4]

Accordingly,

IT IS ORDERED:

1. Defendant Greg Weinman's Motion to Dismiss (Filing No. 39) is granted in part and denied in part as explained above.
    a. Weinman's motion to dismiss for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2) is denied.
    b. His motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) is granted.
2. Plaintiff Zehao Yu's Fourth Amendment claim against Weinman is dismissed with prejudice.

[4]Because the Court is dismissing Yu's *Bivens* claim, it does not reach Weinman's arguments regarding qualified immunity.

Dated this 30th day of September 2026.

BY THE COURT:

Robert F. Rossiter, Jr.
United States District Judge